## 10742. MAY v. THE STATE.

1. The 1st special ground of the motion for a new trial is virtually abandoned in the brief of counsel for the plaintiff in error. The 10th special ground is not referred to in the brief, and will be treated as abondoned.
2. In the light of the note of the trial judge there is no merit in the ground relating to alleged applause and demonstration against the defendant by the audience during the progress of the trial. Moreover, no motion for a mistrial was made, nor any ruling invoked upon which error is assigned. In this connection, see *Harrison* v. *State*, 20 *Ga. App.* 157 (6), 160 (92 S. E. 970), and cases cited.
3. "Where, in answer to questions propounded by the solicitor-general, certain evidence was elicited from a witness, but upon objection from counsel for the accused such evidence was excluded and the presiding judge instructed the jury that it was withdrawn from their consideration and should have no weight with them, and should be given no consideration by them, there was no error in declining to grant a mistrial upon motion because such evidence had been heard by the jury." *Withrow* v. *State*, 136 *Ga.* 337 (3), 338 (71 S. E. 139); *Esa* v. *State*, 19 *Ga. App.* 14 (3) (90 S. E. 732); *Biggers* v. *State*, 19 *Ga. App.* 604 (91 S. E. 919). Under this ruling the court did not err in denying the motion to declare a mistrial.
4. The ground relating to the exclusion of an alleged statement made by the defendant to another person in regard to the homicide, near the body of the person he had killed, is too incomplete to be considered. It is alleged that the statement was admissible as a part of the res gestæ, and yet the ground does not show how near to the time of the homicide the statement was made. "It should appear from the ground

itself that they [the statements] were so nearly connected with the homicide in time as to be free from all suspicion of device or after-thought." *Reeves* v. *State*, 22 *Ga. App.* 628 (5), 630 (97 S. E. 115). The allegation that the statement was made, "as movant insists the evidence shows, immediately after the homicide, to the first person to enter the building after the homicide," does not show this necessary fact, but is a mere argumentative conclusion of the movant, without sufficient facts upon which to base it; and a reference to the brief of the evidence would be necessary to decide this question.

5. The court did not err in propounding to a witness the question com-plained of in the 6th special ground of the motion for a new trial.

6. In the light of the notes of the trial judge the 5th, 9th, 12th, 13th, and 14th special grounds are without merit. The 7th, 8th, and 11th special grounds are without substantial merit.

7. In the light of the note of the trial judge, and the counter-showing made by the State, there is no merit in the grounds which complain that some of the jurors, during a recess of the court and while quartered in an hotel, talked over the long-distance telephone.

8. It was improper for the court, in the presence of the jury and during the progress of the trial, on a Saturday afternoon, to enquire if it would be agreeable to counsel (addressing counsel for both sides) to allow the jury to attend church services on the following Sunday. However, as shown by the note of the trial judge "no motion or objection of any kind was made to such enquiry or suggestion of the court, or any ruling invoked concerning the same until the above stated ground of the motion." Under these facts this inadvertent impropriety of the court does not require a new trial.

9. None of the excerpts from the charge of the court, set out in the 18th, 19th, 20th, 21st, 22d, 23d; and 24th special grounds of the motion for a new trial, when considered in connection with the remainder of the charge and the facts of the case, shows cause for a new trial.

10. It was not error to refuse the request to give in charge to the jury a series of propositions presented en bloc, since some of the propositions were unsound and inapplicable to the facts of the case. Although not all of the propositions were on the same sheet of paper, all of the sheets containing the propositions were attached together and so presented to the judge, and the only request to charge was on the first sheet of paper, and the request was that the court "charge the jury each and all of the following written requests, to wit: " and then followed eight propositions of law, numbered 1st, 2d, 3d, 4th, 5th, 6th, 7th, and 8th. *Western Union Telegraph Co.* v. *Owens*, 23 *Ga. App.* 169 (98 S. E. 116), and authorities cited. As a matter of fact, however, the legal propositions that were sound and applicable to the case were sufficiently covered by the charge given.

11. The court did not err in instructing the jury on the law of voluntary manslaughter.

DECIDED NOVEMBER 6, 1919.

Indictment for murder—conviction of manslaughter; from Decatur superior court—Judge Harrell. June 14, 1919.

Application for certiorari was denied by the Supreme Court.

*E. E. Cox, R. L. Cox, A. E. Thornton, Hartsfield & Conger, J. R. Pottle,* for plaintiff in error.

*R. C. Bell,* solicitor-general, *F. A. Hooper, M. E. O'Neal,* contra.

BROYLES, C. J. The last headnote alone needs elaboration. While there was no eye-witness to the homicide, the defendant in his statement to the jury admitted that he killed the deceased, under the following circumstances, as narrated by him: The deceased came into the defendant's office in the bank of which the defendant was cashier, and demanded that he sign a certain paper, which was a release by the bank of certain assets of the deceased held as collateral security. The defendant refused to do this; and upon his telling the deceased that he was going to leave the building, the deceased said, "No, you are not going to leave this building until you sign this paper." The defendant then closed the doors of the bank's vault, and as he backed out of the vault and was closing the "gate" of the vault he heard the deceased behind him. What then occurred was stated as follows: "He came up and he says,—the words I heard, he says, 'God damn you, you have ruined me and I will fix you, . . and I turned around, and he was coming to me just in this position (illustrating); I was standing there at that end of the door, that little gate, fixing to pull it in, and I looked back and the picture I saw of Mr. Richardson was that piece of iron,—of course I will call it a crank,—I did'nt know at the time what it was, but he had this piece of iron and he made this threat, and he was just in this position, as best I remember, and he had made this threat, and he was right on me then practically close enough to hit. I have had a lot of tussles with Mr. Richardson. He was an athlete, he was an awfully strong fellow, anybody will tell you that, and when he came on to me like that, of course, I could'nt see anything but death. I jumped back as far as I could into that vault door; it was the only way of escape. This door here I could'nt have gotten out there, and I went back into the vault door as far as I could and I remember falling back in there, and I remember shooting one time. Now, when I shot Mr. Richardson he was just in this motion, and the picture I drew of Mr. Richardson after I shot one time went around this way over that desk, that slanting desk, and as I say, just as I shot the first time, and he in this position (indicating), the last picture I

saw of him he went right over this way, and of course I don't remember anything about the shots." The defendant further said in his statement that he told the first person that came into the building after the homicide, "Mr. Deese, I have had to kill Mr. Richardson, I says 'he was trying to kill me, and I had to kill him in defense of my own life.' " The evidence showed that an automobile crank was found, shortly after the homicide, on the floor near the body of the deceased.

It is well settled by numerous rulings of the Supreme Court and of this court that the law of voluntary manslaughter may properly be given in charge to the jury on the trial of one indicted for murder, where, from the evidence or from the defendant's statement to the jury, there is *anything deducible* which would *tend* to show that he was guilty of manslaughter, voluntary or involuntary, or which would be sufficient to raise a *doubt* as to whether the homicide was murder or manslaughter. *Reeves* v. *State,* 22 *Ga. App.* 629 (97 S. E. 115). It is likewise well settled that it is the prerogative of the jury to accept the defendant's statement as a whole, or to reject it as a whole, to believe it in part, or disbelieve it in part. In the exercise of this discretion they are unlimited. *Brown* v. *State,* 10 *Ga. App.* 50, 54, 55 (72 S. E. 537).

Under the above rulings the jury were authorized to disbelieve the following part of the defendant's statement (which was really an argument and a conclusion on his part) : "And when he came on to me like that, of course, I could'nt see anything but death." The jury were also authorized either to reject that part of the statement which showed that the defendant stated to a third person, some time after the killing, "I have had to kill Mr. Richardson, I says, 'he was trying to kill me, and I had to kill him in defense of my own life;' " or, if they believed he had made this self-serving declaration, to disbelieve the truth of it. With these portions of the defendant's statement eliminated, the remainder of the statement authorized the jury to infer that, or at least made it a doubtful question whether, the defendant killed the deceased without any malice, either express or implied, and not under the fears of a reasonable man that a felonious assault was about to be committed upon him. The evidence did not show that the automobile crank which the defendant alleged the deceased used in

the assault was a weapon likely to produce death, but merely that it was a weapon with which death *could* be produced. However, conceding (but not deciding), as argued by able counsel for the plaintiff in error, that this court should take judicial cognizance of the fact that an automobile crank is such a weapon as would likely produce death, the defendant's statement (the evidence is silent on this question), as disclosed by the record, does not *demand* a finding that the deceased, at the time of the assault, *was using this weapon in a way calculated to take human life,* or in such a manner as would arouse the fears of a reasonable courageous man that a felonious assault was about to be committed on him. The record does not disclose how or in what manner the deceased attempted to use the weapon. The deceased made no threat to kill the defendant, or to commit a felony upon his person, the only threat being that he was going to "fix" him. The record is silent as to what the defendant meant by the word "fix." Was he going to "fix" the defendant by killing him, or committing a felony upon his person, or by merely giving him such a beating as would not have amounted to a felonious assault. While it is probably true that the jury were authorized to infer that the deceased, by his threat to "fix" the defendant, meant that he intended to kill him, or to commit a felonious assault upon him, such an inference was not *demanded.* The portions of the defendant's statement which the jury, as shown by their verdict, evidently believed, authorized them to find, that, immediately preceding the homicide, the deceased made an actual assault upon the defendant, accompanied by threats and menaces, but that the weapon employed by the deceased in making the assault (conceding that it was a weapon likely to produce death) was not being used by the deceased at the time of the assault in a way calculated to take human life; that the defendant, in killing the deceased, was not actuated by malice, either express or implied, but that the homicide was the result of a sudden and violent heat of passion aroused in the defendant by the unprovoked assault made upon him by the deceased. From what has been said it follows that the court was authorized to instruct the jury upon the law of voluntary manslaughter.

The verdict was authorized by the evidence and has been approved by the trial judge; no reversible error of law appears to

have been committed on the trial; and the court did not err in overruling the motion for a new trial.

*Judgment affirmed. Bloodworth, J., concurs. Luke, J., dissents.*

LUKE, J. I concur in every conclusion reached by a majority of the court, except the ruling announced in the last paragraph of the decision. I do not think that under the evidence the court should have instructed the jury upon the law of voluntary manslaughter.