## 13034.   RUTLAND *v.* THE STATE.

1, 2. It was proper to charge the jury on the law of voluntary manslaughter; and the instructions on mutual combat and on provocation by words, threats, menaces, or contemptuous gestures, were not error for any reason assigned.

3. The charge of the court as to the effect of proof of good character of one charged with crime was substantially correct.

4, 5. For the purpose of impeachment of a witness, it was proper to admit in evidence an affidavit made by him before the trial, containing statements material to the case and contradictory to his testimony on the trial; and the charge of the court on impeachment by proof of contradictory statements was not subject to the exceptions taken.

7. This court can not hold that the discretion of the trial judge was abused in overruling a ground of the motion for a new trial based on alleged newly discovered evidence which was largely cumulative and impeaching in its character and was met by a counter-showing.

DECIDED JANUARY 19, 1922.

Indictment for murder — conviction of manslaughter; from Tift superior court — Judge Eve.   October 1, 1921.

1.   The charge of the court as to mutual combat is complained of in the motion for a new trial as follows.

"Eighth. . . . (*d*)  The movant points out the following portion of the said charge given to the jury, to wit: 'Mutual combat may exist where there is a mutual intention to fight, though only one blow be struck.'  With reference to this portion of the charge, the movant further points out the fact that it immediately follows the following language used by the court, to wit, 'Section 73 is only to be considered by the jury when they are satisfied from the evidence that the parties were engaged in mutual combat,' and following this the court gives the definition of mutual combat as shown by said first quotation.  The movant insists and contends that this definition of mutual combat is entirely too limited and narrow, and not consistent with the legal definition, and not adjusted to the facts, and not adjustable to the facts of this case, and was materially harmful to the defendant, and requires that a new trial be granted him in this case.  Nothing is said by the court as to when and how the mutual intention to fight must be formed; the nature or character of the intention on the part of the participants.  The jury was not here, nor at any place in the charge, instructed to the effect that it must appear that each and both of the parties to the conflict must be aggressive and deliberately and premeditately agree to enter into the fight in an aggressive and affirmative way, each and both intending and endeavoring to take the life or commit a felony upon the person of the other.  The limitation 'though only one blow be struck,' as used here, is not consistent with the law, and greatly limits and narrows the true rule, particularly when considered with the view to applying it in this case — to the facts of this case.  The jury was not here, nor at any place in the charge, given the explanation and instruction that one blow given by one of the parties to the other would not be sufficient, but that the blows must be mutual as to intention and aggression, and each and both must be inflicting blows, or must be attempting to inflict blows; that each and both must be actually and aggressively engaged in the combat.  The definition here given was probably not understood by the jury, and there was not enough given to

enable the jury to understand and apply the true definition of the terms ' mutual combat ' as here used by the court, and as used or referred to by section 73 of the Penal Code."

2. The ground of the motion for a new trial referred to in division 2 of the decision is as follows:

" Eleventh. The court charged the jury as follows, to wit: ' I will say in explanation of that section, commencing with provocation by words, threats, menaces, or contemptuous gestures, while the doctrine of reasonable fears is not involved in the offense of voluntary manslaughter, I will state now that the portion of the above section relating to provocation by words, threats, menaces, or contemptuous gestures is not in any way a limitation or curtailment or qualification of the right or doctrine of self-defense by one under a reasonable fear that his life is in danger, or that a felony is about to be committed upon him. This merely means that, where a person kills through anger from opprobrious words, he must have some better reason for the killing than merely opprobrious words.' The movant insists and contends that this portion of the charge was erroneous and contrary to law, and very harmful to the defendant and his cause, entitling him to a new trial in this case, for the following reasons and grounds, each and all of which are insisted upon, to wit:

" (a) Because a charge on the subject covered by this portion of the charge was not warranted by or adjustable to the facts of this case.

" (b) Because the instruction here given was confusing and misleading to the jury, and did not make it clear that the instruction to the effect that ' provocation by words, threats, menaces, or contemptuous gestures shall in no case be sufficient to free the person killing from the guilt and crime of murder ' was only applicable upon the consideration of the issue as to whether the killing was the result of a sudden violent impulse of passion supposed to be irresistible, and as to whether such passion was brought about by provocation by words, threats, menaces, or contemptuous gestures only, or by an actual assault upon the person killing, or an attempt by the person killed to commit a serious personal injury upon the person killing, or by other equivalent circumstances, and the instruction given is not sufficient to make it reasonably clear to the jury that the reasonable fears that would

justify and entitle the defendant to an acquittal might be engendered by words, threats, menaces, or contemptuous gestures.

" (c) The following portion of this charge, to wit: 'This merely means that, where a person kills through anger from opprobrious words, he must have some better reason for the killing than merely opprobrious words,' the movant insists was confusing and misleading to the jury, was without facts to justify it, and probably deprived the defendant of the benefit of his defense under the doctrine of reasonable fears. The jury could not have understood from this instruction that it had the right to consider any evidence or facts shown by the defendant's statement showing opprobrious words, threats, menaces, or contemptuous gestures, on the part of the deceased toward the defendant in determining whether the defendant at the time of firing the fatal shot acted under the influence of reasonable fears that his own life was in danger, or that a felony was about to be committed upon him by the deceased, and that he would be entitled to an acquittal, that reasonable fear, not anger, engendered by opprobrious words, threats, menaces, or contemptuous gestures, might free him from guilt of any offense."

*Fulwood & Hargrett, Ridgdill & Mitchell,* for plaintiff in error.
*R. S. Foy, solicitor-general, Smith & Christian,* contra.

BROYLES, C. J. 1. " It is well settled by numerous rulings of the Supreme Court and of this court that the law of voluntary manslaughter may properly be given in charge to the jury on the trial of one indicted for murder, where, from the evidence or from the defendant's statement to the jury, there is *anything deducible* which would *tend* to show that he was guilty of manslaughter, voluntary or involuntary, or which would be sufficient to raise a *doubt* as to whether the homicide was murder or manslaughter." *May* v. *State,* 24 *Ga. App.* 382 (100 S. E. 799), and citation; *Elders* v. *State,* 24 *Ga. App.* 279 (100 S. E. 781), and citations. Under this ruling the court did not err in instructing the jury upon the subjects of mutual combat and of voluntary manslaughter; nor were the charges upon these subjects erroneous for any reason assigned.

(a) The definition of " mutual combat," in the charge of the court, and the charge upon that subject, were sufficiently full, in the absence of timely and appropriate requests for more elaborate instructions thereon.

2. The excerpt from the charge upon the subject of provocation by words, threats, menaces or contemptuous gestures, as complained of in the motion for a new trial, when considered in the light of the entire charge and the facts of the case, was not erroneous for any reason assigned.

3. Complaint is made of the following charge: "Good character of one on trial for crime, if satisfactorily proved, may be considered by the jury along with the other evidence in the case, and may of itself, in a case where guilt is not plainly established, be sufficient to generate in the minds of the jury such a reasonable doubt of guilt as would authorize his acquittal." This charge was substantially correct and was not error for any reason assigned. See, in this connection, *Hill* v. *State*, 18 *Ga. App.* 259 (1 *b*) (90 S. E. 351).

4. The court did not err in admitting in evidence, over the objections of the defendant, an affidavit made by a witness for the State before the trial, for the sole purpose of impeaching the witness, the affidavit containing statements material to the case and to the witness's testimony upon the trial and contradictory to such testimony.

5. Exception is taken to the following excerpt from the charge of the court: "The State has, as it is its privilege to do, undertaken to impeach one of the defendant's witnesses by proving certain statements alleged to have been made by her before the trial, conflicting with her testimony delivered upon the stand, and for that purpose has introduced for your consideration an affidavit admittedly signed by her on the morning following the death of the deceased. I charge you the purpose for which such affidavit was admitted for your consideration was and could be only that of impeaching the witness in question and discrediting the testimony delivered by her upon the trial. You will consider it only to that extent and for that purpose, that is, that of determining whether or not you will believe the testimony delivered in your hearing by the witness in question. The affidavit referred to is not evidence of the defendant's guilt or of the allegations contained therein, and you are charged to refer to it and consider it only in order to determine the credibility of the witness who signed it. You are not to consider the affidavit or any statements therein contained in determining whether or not the

defendant is guilty of the crime charged. I charge you, without intimating any opinion as to what has or has not been established by the evidence, the following code section relative to the subject of impeachment: A witness may be impeached by contradictory statements previously made by him as to matters relevant to his testimony and to the case. Before contradictory statements can be proved against him (unless they are written statements made under oath in connection with some judicial proceedings) his mind should be called with as much certainty as possible to the time, place, person, and circumstances attending the former statement, and, if in writing, should be shown to him, or read in his hearing, if in existence. As explanatory of the rule laid down in that code section, I charge you when the credibility of a witness is attacked, as by an effort to impeach him in any of the methods pointed out by law, the jury then become the triors of the credibility of the witness sought to be impeached, and of the witness or witnesses by whose testimony the attack is made; they are to weigh the opposing testimony, and at last say whether they will discredit the testimony of the witness sought to be impeached, and consequently give credit to that introduced by way of impeachment, or whether they will discredit the testimony introduced for the purpose of impeachment, and credit that of the witness attacked. In a word, it is the exclusive province of the jury, under all the attendant circumstances and conditions, to determine whether a witness has or has not been impeached. A witness is never impeached in contemplation of the law until there is a mental conviction produced upon the mind of the jury by proof that he is unworthy of credit. You thus see that it is a matter solely for the determination of the jury." The following portion of this excerpt from the charge, to wit, " They [the jury] are to weigh the opposing testimony, and at last say whether they will discredit the testimony of the witness sought to be impeached, and consequently give credit to that introduced by way of impeachment, or whether they will discredit the testimony introduced for the purpose of impeachment, and credit that of the witness attacked," is excepted to on the ground that it " had the effect to leave it to the jury to adopt and credit as direct evidence in the case the affidavit of this witness previously made or the testimony delivered on the trial, leaving the jury to compare the

testimony on the trial with the affidavit previously made, and adopt either." When this portion of the excerpt is considered in the light of the entire excerpt, there is no merit in the exception. Exceptions were taken also to other portions of the excerpt quoted above, but they are without substantial merit.

6. None of the other excerpts from the charge of the court, when considered in the light of the charge as a whole and the facts of the case, shows reversible error.

7. The alleged newly discovered evidence is largely cumulative and impeaching in its character and was met by a counter-showing on the part of the State. Under these circumstances we cannot say that the court abused its discretion in overruling those grounds of the motion for a new trial which were based upon the alleged newly discovered evidence.

8. The verdict was authorized by the evidence, and the court did not err in overruling the motion for a new trial.

*Judgment affirmed. Luke and Bloodworth, JJ., concur.*