SMITH *v.* THE STATE.

No. 12948. NOVEMBER 14, 1939.

*Warren Hall Jr., Durwood T. Pye,* and *L. Daniel Duke,* for plaintiff in error.

*Ellis G. Arnall, attorney-general, John A. Boykin, solicitor-general, J. Walter LeCraw, E. J. Clower* and *C. E. Gregory Jr., assistant attorneys-general,* contra.

REID, Chief Justice. Richard Smith and Raymond Carter were jointly indicted for the murder of T. H. Herd, and upon the separate trial of Richard Smith he was found guilty, without recommendation, and was sentenced to be electrocuted. His motion for new trial having been overruled, he excepted, assigning error on that ruling, on the general grounds of the motion, and on two special grounds which complained of the admission of certain testimony, and of a refusal to order a mistrial in connection with certain statements by a witness. The facts as presented at the trial showed substantially the following case:

T. H. Herd, deceased, was a night watchman employed by several stores located at Rhodes Center in Atlanta. He was found early in the morning of October 16, 1938, in an unconscious condition and seriously injured, lying in the street somewhere near these stores. The wound from which he was suffering, and from which in a few hours he died, had been made by a blow upon the head from some blunt instrument which produced a concussion of the brain. The State relied for a conviction on the testimony of the alleged accomplice, Raymond Carter, a written statement by the accused made before the time of trial, which was presented as a confession made by the defendant, and proof of the corpus delicti.

Raymond Carter, the alleged accomplice, who at the time of the trial was under a death sentence for another murder, testified that he had come to Atlanta on October 15, and had gone to defendant's home, and after spending the afternoon with the defendant at a picture-show, lunch-stand, and various other places, accompanied the defendant somewhere on the north side of Atlanta, the witness being unfamiliar with the streets and locations in the city, never having been in Atlanta before. In substance, his testimony was that the defendant was looking in the vicinity where the homicide finally occurred, seeking some suitable place "to do a job," apparently meaning burglary or robbery; that they first looked over the location of the liquor store to see whether there was a large crowd around; that on making the investigation the defendant

suggested that they wait awhile; that later, after the store was closed, they went back to this place; that the witness merely kept a lookout while the defendant broke the plate-glass window and entered the liquor store; that the defendant had a milk bottle which he had filled with sand, and which was wrapped with cloth; that after the defendant had broken the store window, "that night man came up," and the defendant then struck the watchman in the head, apparently with the milk bottle. Carter testified as to various other details; but, for the questions raised by the assignments of error, only the foregoing need be quoted.

In the statement which the State relied upon as a confession, and which had been sworn to by the defendant, he admitted planning with Raymond Carter the robbery of the liquor store and his own participation in it, but contended that it was Carter who hit the watchman in the head with the milk bottle filled with sand. The pertinent portions of his statement were as follows: "A man whom I know by the name of Raymond was waiting for me at my house Saturday evening, October 15th. We left my house about 1:30 in the afternoon of October 15th, and we walked around. Raymond was telling me about jobs he and some other boys, whose names I do not know, had pulled. I took him to a whisky store at the corner of Spring and Peachtree Streets, to see if it was a good place to rob. We left there after he agreed it would be a good place to rob that night, and went to a picture-show on Mitchell Street. After coming out of the picture-show, we went to Wilson's Grill on Mitchell Street, and ate supper. . . He met me about 11:30 or 12 that night, and we walked out to the whisky store at Peachtree and Spring Streets. When we got there Raymond had a milk bottle he had got somewhere. I did not know he had the milk bottle or a napkin. I told him to watch; then I picked up a brick in a parking lot next door to the whisky store, and then I took the brick and broke the glass in the front door of the whisky store. I just walked by and hit the glass with the brick, and turned the brick loose. I went in the store through the door where the glass had broken, and looked in the cash register, and there was nothing in it. I got three pints of whisky and came on out. When I came out the night watchman came up, and he told me to stop. He had a pistol in his hand, pointed at me. Raymond came up from the alley at this time and hit the watchman in the head from

behind with a milk bottle filled with sand and wrapped in a napkin. We walked back out Spring Street to near the bus station, the Union Bus Station, where I left him. I do not know what time it was. I then went on back home and went to bed. When we went in the whisky store the neon sign on the window was burning. When I saw the watchman he had his pistol in one hand and a clock in the other. He was wearing a cap. When we left the whisky store and started toward Spring Street I saw the watchman laying in Rhodes Center, close to the alley." Various witnesses, including members of the defendant's family residing at 344 Newton Street, contended that the only time Carter had ever been in their home was on a date given by them as October 8, the week before the killing; and much testimony was given to corroborate that claim by way of outlining different events which could be verified as having taken place on October 8 and not on October 15, the purpose being to show that the two were not together on the date the crime was alleged to have been committed.

At the outset the defendant contends that his conviction was without evidence to support it. The testimony of Raymond Carter, defendant's accomplice, is sufficient to authorize a verdict of guilty, if the record shows corroborating circumstances sufficient to dispense with the requirement of the Code, § 38-121, that there be no conviction of a felony on the testimony alone of an accomplice. The State contends that the requisite corroboration was supplied by a sworn statement made by the defendant before the trial, in which he admitted participation in the crime. Counsel for the defendant urge upon us the point that this statement does not amount to a full confession of the crime, and therefore is insufficient. It is admitted by counsel for defendant that the statement involved is one of an incriminating nature because by what is said the defendant admits his participation in the crime of burglary from which the murder resulted. The contention is made, however, that the murder of the watchman was not one of the "incidental probable consequences" to be contemplated from this particular crime. In this connection see *Jackson* v. *State*, 172 *Ga.* 575 (158 S. E. 289) ; *Gore* v. *State*, 162 *Ga.* 267 (134 S. E. 36) ; *Lumpkin* v. *State*, 176 *Ga.* 446, 449 (168 S. E. 241) ; *Berryhill* v. *State*, 151 *Ga.* 416 (107 S. E. 158). But, assuming that this did not amount to a full confession, and instead amounted merely to an incriminat-

ing admission from which guilt might be inferred, there is no merit in counsel's contention. It is well settled that the corroborating circumstances to support the testimony of an accomplice need not be such as to lead conclusively to the inference of the guilt of the accused. As was said in *Childers* v. *State, 52 Ga.* 106, 117, "The rule is, and ought to be, that some facts must be shown by other witnesses, tending to show guilt in the person on trial." And in *Callaway* v. *State, 151 Ga.* 342, 344 (106 S. E. 577), "if the expression 'corroborating circumstances must be such as, independently of the testimony of the accomplice, would lead to the inference of the guilt of the accused' [and must in some way connect the defendant with the criminal act], means that they must be such as to lead conclusively to the inference of the guilt of the accused, then that rule is too strong in favor of the accused."

"The jury are not authorized to convict upon the uncorroborated testimony of an accomplice. What shall be the extent of this corroboration is a question to be determined by the jury. It may be strong, or it may be slight; but in each case it must be of such character as to satisfy the minds of the jury as to the connection of the accused with the criminal enterprise. As was held in *Chapman* v. *State, 109 Ga.* 157, 164 (34 S. E. 369), the judge should not charge the jury as matter of law that slight evidence is sufficient to corroborate the testimony of an accomplice. But as matter of fact slight evidence is sufficient if it is satisfactory to the minds of the jury." *Rawlins* v. *State, 124 Ga.* 31, 49 (52 S. E. 1).

"The rule as we understand it is: 'There must be some fact deposed to, independently altogether of the evidence of the accomplice, which, taken by itself, leads to the inference not only that a crime has been committed, but that the prisoner is implicated in it.'"

In *Hargrove* v. *State, 125 Ga.* 270 (54 S. E. 164), a conviction of murder by one of two co-conspirators was upheld over the objection that there was not sufficient corroboration of the testimony of the accomplice. Among the circumstances which the court held sufficient for this purpose was the fact in evidence that the accused had admitted to the agent of the Western & Atlantic Railroad Company that he and the witness (accomplice) "had been robbing the railroad company for over two years." The deceased was the watchman of the W. & A. Railroad yard, and was killed

in the yard of that company. Certain other admissions of the accused contained in a letter from him, which had been intercepted by the jailer, were also allowed in evidence and considered by the court as of a nature to corroborate the testimony of the accomplice.

The defendant is not convicted on the independent facts or circumstances introduced to support the statement of his accomplice. He is convicted on the testimony of his accomplice, the other evidence being introduced to guarantee the credibility of the direct testimony. The evidence was sufficient to support the verdict.

■ It is contended that a new trial should have been granted, because of the admission into evidence of the following testimony: B. W. Seabrook, captain of the identification bureau of the police force of the City of Atlanta, a witness for the State, testified: "The first thing that ever came up about this thing was these negroes were brought from Jackson, Georgia, to me by the chief deputy of the Fulton tower, Mr. Foster, and the sheriff of Butts County, and asked me to question them to determine which of the negroes had actually killed the chief of police down there. When I talked to each one, I asked them had they pulled a job in Atlanta, inasmuch as they had a part in the job there, and this Williams negro told me that the only one that had been in Atlanta was Raymond Carter." The defendant's attorney objected to this testimony, and said, "He is describing two men, and neither of them is Richard Smith, the defendant on trial." An extended colloquy between the court and counsel followed, in the course of which counsel for the defendant said: "He is not speaking of Richard Smith now. He is speaking of Raymond Carter and a boy named Williams." The court sustained the objection to what Williams said, but overruled it as to the rest of the officer's testimony explaining the circumstances leading up to the securing of a statement from Carter. The defendant contends that this evidence was inadmissible as "supposition evidence of the witness respecting the supposed connection of the defendant with a separate and distinct homicide." It is obvious from the excerpts set out above that. the witness was not referring to the defendant, and that counsel knew that the testimony did not refer to the defendant. It was not contended by any one that the defendant was connected with the slaying at Jackson, referred to by the witness, and it seems clear that the jury could not have so concluded. It is clear that

the police officer's testimony was given in explanation of Carter's connection with the crime and the circumstances of procuring the previous statement from the defendant. The testimony was not objectionable as an attempt to introduce evidence of a separate and unrelated crime committed by the defendant. Code 1933, § 38-202.

So far as this ground of the motion is based upon the introduction into evidence of testimony concerning the murder in Jackson, Georgia, of which Carter was convicted, the defendant had already injected this fact into the evidence in his examination of Carter. Therefore its admission would not justify the grant of a new trial. *Annunciato* v. *State,* 176 *Ga.* 787 (169 S. E. 3).

■ In special ground 2 of his motion for new trial, the defendant contends that the failure to declare a mistrial on the introduction of certain testimony was erroneous. A witness for the State, in recounting a conversation with a negro taxicab driver, stated: "He said, 'I know Richard, but he never hired me in his life. Have known him a long time. I knew him in the chain-gang at Thomaston.'" Objection to this statement was sustained, and the jury was fully instructed to disregard it. At the conclusion of the witness's testimony counsel for defendant moved that a mistrial be declared. The court did not err in overruling the motion, since "Whether or not the question and answer were legitimate, the defendant, having made an election to have the same excluded and having obtained a ruling to that effect, could not thereafter demand that a mistrial be declared. *Patton* v. *State,* 117 *Ga.* 230 (10) (43 S. E. 533) ; *Rawlins* v. *State,*" supra. *Trussel* v. *State,* 181 *Ga.* 424 (182 S. E. 514). See *Withrow* v. *State,* 136 *Ga.* 337 (71 S. E. 139) ; *May* v. *State,* 24 *Ga. App.* 379 (100 S. E. 797).

*Judgment affirmed. All the Justices concur.*