28927. WALTON v. THE STATE.

DECIDED JUNE 17, 1941.

H. A. Allen, John H. Hudson, for plaintiff in error.

John A. Boykin, solicitor-general, J. Walter LeCraw, Daniel Duke, contra.

MACINTYRE, J. W. T. Walton was indicted on a special presentment alleging eleven misdemeanors (assault and battery). Eight counts were nolprossed. The defendant was convicted on counts 3, 4, and 6. His motion for new trial was overruled, and he excepted.

1. The evidence for the State amply authorized the verdict. The defendant, in the company of others on the dates named in the special presentment, went to the houses of E. K. Ramage, P. S. Toney, and Bert Harris. The jury were authorized to find that the general plan or scheme was to go to the homes of these persons, pose as officers of the law with fake warrants and with handcuffs, tell the individuals they were taking them to jail, but instead take them into lonely woody sections on the outskirts of town, strip them of their clothes, handcuff them and make them lie face down on the ground. Then the defendant with others would inflict twenty or twenty-five licks on the bodies of the victims with a heavy leather strap which would cause the flesh to curl and make great whelp marks on their bodies where the lashes struck. The victims were then left to return home the best way they could. The reason given for beating Ramage was drinking and creating disturbances in his neighborhood; for beating P. S. Toney, his association with the "damn CIO" after being warned never to attend another meeting; for beating Bert Harris, drinking too much. The beating of each individual, which constituted a separate count in the indictment, was established by the evidence, and the finding that the defendant was connected with such beatings was authorized.

2. The paper in which the offense was charged was not in the form where the prosecutor prefers the bill of indictment and his name appears thereon, and is what is known as an indictment, but the paper here which charged the offense for which the defendant

was tried was a special presentment, which has no prosecutor, but originates with the grand jury and is drawn at their instance. *Head* v. *State,* 32 *Ga. App.* 331 (123 S. E. 34). The offense charged in this special presentment comes clearly within that class of cases known as "offenses against society." The jury found that the evidence showed an organized plan and system of a band of men to take the law into their own hands, which tends to break down all respect for law and order. By going out into the night, in bands, to flog people against whom they had grievances of some sort, or people whom they charged with improper conduct, the individuals assailed justice itself. Most assuredly this was an offense against society. In *Taylor* v. *State,* 174 *Ga.* 52, 69 (162 S. E. 504), the Supreme Court quoted approvingly from *Cohen* v. *State,* 2 *Ga. App.* 689 (59 S. E. 4): "In those cases where the offense is against society in general and there is no prosecutor, the return by the grand jury of a presentment containing the exception will *presumptively* establish that the offense or offender was unknown, until the statement is denied by evidence on the part of the defendant. There is in this ruling no conflict with the established rule that the State must prove every material fact essential to show the guilt of him who is accused of crime; for, as we have stated, this is no part of the crime, but merely an exception to a rule in his favor." Count 6 of the special presentment charged the defendant with assault and battery on Bert Harris on March 21, 1938, and further charged that the "perpetrator of the said offense was unknown until March 24, 1940," a date within the statute of limitations. The judge in charging the jury in connection with this portion of the count of the special presentment, after charging with reference to the statute of limitations in misdemeanors, stated: "I charge you further that where an indictment charges that the offense was committed on a date not within the two-year period as explained, the indictment must go further and allege that the offender or offense was unknown until some time within the two-year period. [If the indictment thus charged that the offender or offense was unknown until some time within the two-year period, the presumption arises in favor of the State that the fact is correct.] The defendant, of course, may rebut this presumption by disproving the fact thus alleged as to the charge of the offender or offense." (Brackets ours.) The defendant contends that the por-

tion of the charge quoted above in brackets was an incorrect statement of the law, and relieved the State of the burden of proving all the material allegations in the indictment, and that the judge clearly stated to the jury that if this particular allegation was made, and it was a material allegation, it would raise a presumption in favor of the State that the allegation was true, when, as a matter of law, if such an allegation is made the burden is on the State to prove the same. If we should concede that this charge was erroneous, it was in this case harmless; for the evidence for the State clearly showed that the perpetrator of the offense against Bert Harris was unknown to the State until March 24, 1940, and there was no evidence to the contrary. The instant case was shown to be well within the exception to the statute of limitations applicable to crimes stated in the Code, § 27-601. See *Langston* v. *State,* 23 *Ga. App.* 82 (97 S. E. 444) ; *Pylant* v. *State,* 191 *Ga.* 587 (13 S. E. 2d, 380). Seven of the eight cases cited by the defendant as here controlling are distinguished from the instant case, in that they were not based on special presentments. In the eighth case, the evidence for the defendant completely rebutted this presumption in favor of the State. This ground is not meritorious for any reason assigned.

3. Special ground 2 is controlled adversely to the defendant by ground 9 of *Eidson* v. *State,* 65 *Ga. App.* 119 (15 S. E. 2d, 452).

4. Ground 3 complains that the judge erred in not declaring a mistrial because of the testimony of Mrs. Ramage, a witness for the State, to the effect that "Ike Gaston was killed." It appears that at the time the evidence was given the judge sustained a timely objection and ruled out the testimony. Later, after the cross-examination of this witness had ended, the attorney for the defendant made a motion for mistrial on the ground that this testimony was immaterial and irrelevant, inflammatory, and highly prejudicial. The Supreme Court held in *Smith* v. *State,* 189 *Ga.* 169 (3) (5 S. E. 2d, 762) : "Where in the trial of a case evidence is ruled out on objection that it is irrelevant and immaterial, and examination of the witness is continued and concluded, it is not error to deny a motion to declare a mistrial, then made, on account of the alleged prejudicial nature of such evidence." This ground is not meritorious.

5. Grounds 4, 5, and 7 complain of the admission of testimony

with reference to there being within the East Point Lodge of the Ku Klux Klan a secret grievance committee, and how it operated, etc. It is contended that this evidence was immaterial and irrelevant to any issue involved in the trial of these three assault and battery cases, and that it was highly prejudicial, and deprived the defendant of his right to a fair and impartial trial before a fair and unprejudiced jury. The portion of the testimony complained of in ground 4 was in effect admitted provisionally on condition that the solicitor would subsequently connect the same and show its relevancy. The objection was not renewed, nor was the court's attention called to the matter thereafter; and this ground does not present a point for consideration as to the admissibility of the evidence. *Stone* v. *State,* 118 *Ga.* 705 (9) (45 S. E. 630, 98 Am. St. R. 145). Furthermore, the admission of this same evidence was assigned as error in ground 7, and the evidence objected to in grounds 5 and 7 was the testimony of a witness that there was a "secret committee," and that "on that committee at the time Mr. Toney was flogged were Mr. Walton [the defendant], Mr. Forster, Mr. Cawthon, Mr. Bryan, Mr. Lee, Mr. Eidson, and Mr. Bishop." There was other testimony that Floyd Lee acted as chairman of the committee; that the chairman and committeemen were appointed by the exalted cyclops of the East Point Klan; that the committee was formed for the purpose of attending to and punishing people against whom grievances were presented; and that they had information that Toney was one of the fellows to head a strike at the Scottdale Mill, and the members of the "secret committee" got one Guffin to point out Toney's home to them. We think this evidence was clearly admissible as tending to show that the defendant and his fellow committee members of the East Point Ku Klux Klan who were on the "secret committee" had entered into a general conspiracy to flog persons against whom they had "grievances," and that the flogging was a part of a series of connected crimes. *White* v. *State,* 177 *Ga.* 115 (3) (169 S. E. 499) ; *Morris* v. *State,* 177 *Ga.* 106 (4) (169 S. E. 495) ; *Eidson* v. *State,* supra.

6. Ground 6: On cross-examination the witness Trimble testified that when he first went before the grand jury he testified that he knew nothing about the floggings, but that he went before them a second time and told all. On redirect examination he testified that he had not told the truth on the first appearance before

the grand jury because the exalted cyclops had advised him not to know anything when he appeared before the grand jury, and he felt bound by his oath of secrecy to the klan, but that in the meantime he had consulted the klan's attorney, who had told him he would have to answer the questions before the grand jury, and on the second appearance he told all, and that he apologized to the grand jury for his testimony on his first appearance. Whereupon the defendant made a motion to declare a mistrial. After colloquy between counsel and the court, the judge ruled out the evidence with reference to the witness apologizing to the grand jury, and overruled the motion for mistrial. The court then withdrew from the jury's consideration the testimony with reference to the conversation with the cyclops. The defendant excepted to the overruling of his motion for mistrial, on the ground that the failure to exclude all the evidence was "under the circumstances highly prejudicial, and should not have been allowed to go to the jury." The testimony about the apology to the grand jury and the conversation with the cyclops was excluded by the judge; and the fact that the witness had testified falsely on his first appearance before the grand jury having been shown on cross-examination, it was, we think, relevant and proper for the State on redirect examination to allow the witness to explain his conduct on the first appearance, in order that the State might neutralize the effect of the testimony given on cross-examination and attempt to sustain its witness's credibility, which was of course for the jury. See *Lance* v. *State,* 166 *Ga.* 15 (12) (142 S. E. 105); *Aycock* v. *State,* 62 *Ga. App.* 812, 817 (10 S. E. 2d, 84). This ground is not meritorious.

7. Ground 8: Floyd Lee, for the State, had testified to certain facts on direct examination; and although answering certain questions propounded by the solicitor-general, he refused to answer certain other questions on *direct examination,* on the ground that the answers would incriminate him. Whereupon the defendant made a motion to exclude all of the witness's testimony, on the ground that the defendant was deprived of his right of cross-examination of this witness, because he claimed privilege. The solicitor-general at first conceded that, under *McElhannon* v. *State,* 99 *Ga.* 672 (2) (26 S. E. 501), it was proper to rule it out. The defendant's counsel replied: "I am the witness's attorney, and decline to cross-examine him." The court then ruled out the testi-

mony. Subsequently the solicitor-general made a motion to reinstate the testimony of Lee, and the court allowed a reinstatement of only that part of it which related to his knowledge of, or having seen, certain persons with certain types of automobiles; and so instructed the jury. The defendant contends that this was error. We can not agree to this contention. The evidence was relevant to the issues in the case, and was admissible for the purpose of proving the identity of the defendant and his co-conspirators. The effect of the ruling in *McElhannon* v. *State,* supra, is that where a witness testified on a certain subject on direct examination, if when cross-examined as to this particular subject he refused to testify on said subject on the ground that it would incriminate him, the whole of his testimony on this subject on direct examination, which he claimed on cross-examination would incriminate him, should have been excluded. This rule is not applicable to the instant case. Here the witness, on direct examination by the solicitor-general, refused to answer certain questions on a subject propounded on *direct examination,* on the ground that his answers would incriminate him, and the solicitor-general turned over the witness to counsel for the defendant for cross-examination, and when offered for cross-examination counsel for the defendant stated: "I am the witness's attorney and decline to cross-examine him." The witness was never given an opportunity to decline to answer, on cross-examination, questions which related to the subject about which he had already answered questions on direct-examination, and as to the questions he declined to answer on direct examination no attempt was made to cross-examine him. In short, the witness *has never declined to answer any question on cross-examination.* The witness himself must decline to answer a question which in his opinion tends to incriminate him, and counsel can not decline for him; for, irrespective of the advice of counsel, he could still answer the question if he wished to do so. We do not think that the defendant was deprived of his right of the cross-examination of a State's witness because he claimed privilege.

8. Grounds 9, 10, 11, and 12 assign error on the admission of evidence of other crimes of flogging in which the defendant was identified as one of the participants. Generally, evidence of other crimes is inadmissible. However, the evidence admitted and objected to in the instant case clearly came within the exceptions to

the general rule, and was admissible for the purpose of showing motive, plan, or scheme. *Cooper* v. *State,* 182 *Ga.* 42 (3) (184 S. E. 716, 104 A. L. R. 1309). The evidence it was sought to exclude was admissible, because it related to similar crimes committed by a band of men under circumstances similar to those presented by the crimes for which the defendant was on trial, and particularly because the evidence showed that the defendant posed as an officer of the law in each instance, and took a leading part in conducting fake arrests of the victims. The general plan and system of these crimes were similar, and indicated that they were all a part of a general conspiracy by the defendant and others to commit such floggings. The cases cited by the defendant all came within the general rule, and are not here applicable. These grounds are not meritorious.

*Judgment affirmed. Broyles, C. J., and Gardner, J., concur.*