**SMITH v. LAWRENCE, Warden.**

No. 10107.

Circuit Court of Appeals, Fifth Circuit.

June 16, 1942.

Rehearing Denied July 20, 1942.

George W. Willingham, of Atlanta, Ga., and Edwin H. Grace, of New Orleans, La., for appellant.

John A. Boykin, Sol. Gen., Quincy O. Arnold, Asst. Sol. Gen., and Ellis Arnall, Atty. Gen., of Georgia, all of Atlanta, Ga., for appellee.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

Richard Smith was indicted, tried, convicted, and sentenced to death in the Georgia State Court for the murder of a night watchman during a liquor store burglary at Rhodes Center in Atlanta, Georgia. At the trial in the State Court, Raymond Carter, an alleged accomplice who was then under death sentence for another murder, testified that he and Smith were engaged in the burglary of the liquor store when the night watchman came upon them, and that Smith hit the watchman over the head with a milk bottle filled with sand. There was also introduced in evidence a signed statement of Smith which recited that he and Carter went to the liquor store together; that he, Smith, took a brick and broke

'the glass in the front door and entered the store; that he found the cash register empty; that he then took three pints of whiskey and walked out; that as he came out the night watchman came upon him with a gun, and Carter, who was watching, came out of the alley "and hit the watchman in the head from behind with a milk bottle filled with sand and wrapped in a napkin". The testimony of Raymond Carter and the statement of Richard Smith were in agreement, except that each of them claimed the other one struck the fatal blow.

At the trial Smith was represented by two qualified lawyers of his own choice and employment. The admission of his signed statement in evidence was not objected to, and it was not contended that the statement had been involuntarily given or that coercion had been used to secure it. After conviction, motion for a new trial was made, but no point was raised as to the admission of the signed statement. After denial of the motion for a new trial, an appeal was taken to the Supreme Court of Georgia, but no contention was there made as to the voluntary or involuntary character of the signed statement. After reviewing the evidence in the case, the Supreme Court of Georgia said, "The defendant is not convicted on the independent facts or circumstances introduced to support the statement of his accomplice. He is convicted on the testimony of his accomplice, the other evidence being introduced to guarantee the credibility of the direct testimony." Having found the evidence sufficient to support the verdict of guilty, the court affirmed the judgment of conviction. Smith v. State, 189 Ga. 169, 5 S.E.2d 762.

After the case had been affirmed, Smith filed his petition for a writ of habeas corpus in the City Court of Reidsville, Georgia, alleging for the first time that the signed statement which had been used in his trial had been illegally procured through coercion. Proceedings were had in the City Court, and after hearing evidence and argument the court dismissed the petition on May 13, 1940. On appeal the judgment was affirmed by the Supreme Court of Georgia, Smith v. Henderson, Warden, 190 Ga. 886, 10 S.E.2d 921. Petition for reargument was denied, and petition for a writ of certiorari was then filed in the Supreme Court of the United States. The petition was denied, Smith v. Henderson, Warden, 312 U.S. 698, 61 S.Ct. 737, 85 L.Ed. 1132.

Thereafter, on May 20, 1941, Smith filed his petition for a writ of habeas corpus in the United States District Court, and again alleged that his conviction for murder in the State Court had been obtained by the use of an involuntary statement or confession which had been secured from him by coercion in violation of his constitutional rights. On July 18 and 19, 1941, a hearing was held and much testimony was taken—the petitioner testifying at length in his own behalf. On July 30, 1941, the trial judge filed an opinion, found the issues against the petitioner, and entered an order discharging the writ and remanding the petitioner to the custody of the warden of the Georgia State Prison.

The record shows that Raymond Carter was being held under sentence of death for the murder of the Chief of Police of Jackson, Georgia. Carter was questioned by officers about other crimes, and he gave a statement that he and Smith had burglarized the Rhodes Center liquor store, and that Smith hit the night watchman over the head with a milk bottle. Smith was then apprehended and placed in jail on a Sunday night. He was not questioned that night. On Monday he was questioned by several officers, but denied his guilt and, in an effort to establish alibis, he named persons he had seen and places he had visited on the night in question. Upon investigation his statements were found to be false in a number of instances. During the questioning Smith admitted that he and Carter had been together on the day of the murder, and that they had been engaged in trying to sell stolen cigarettes, but he denied that he knew anything about the murder. The next morning, Tuesday, he was questioned again, and again denied that he participated in the crime. Then after being advised that Raymond Carter had told the officers about the crime, and after being confronted with Carter, Smith said he would tell the truth. He then told the story that was incorporated in his signed statement. Although he claims that coercion and intimidation was used to get his confession, it may be noted that he never admitted that he struck the fatal blow, but always insisted that his accomplice, Carter, was the one who struck the watchman.

All of the officers who questioned Smith and who were named by him as his inquisitors, except one who died before the habeas corpus hearing, testified that the confession

was voluntarily given, that no violence was used, that no threats or promises were made, and that the questioning was not frequent or of long duration, nor coercive or intimidating in character. Smith admits that no violence was used, but contradicts the statements of the officers that the signed statement was given without coercion or intimidation.

■ It is a well-established general rule that a writ of habeas corpus may not be used to perform the functions of a writ of error. United States v. Valante, 264 U.S. 563, 44 S.Ct. 411, 68 L.Ed. 850; Beard v. Sanford, 5 Cir., 99 F.2d 750. Here the appellant made no effort at his trial to prevent the introduction of the confession on the grounds that it had been secured by threats, coercion, or intimidation. He made no complaint on his appeal in error to the Supreme Court of Georgia, nor did he seek review in the Supreme Court of the United States as was done in the cases he relies upon, Chambers v. Florida, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716; White v. Texas, 310 U.S. 530, 60 L.Ed. 1032, 84 L.Ed. 1342; Brown v. Mississippi, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682.

■ Aside from the fact, however, that the appellant could have raised the question at the trial and then sought review by proceedings in error, we have nevertheless carefully reviewed the record and have found that he failed to make a case on his petition for discharge. On the habeas corpus hearing before the District Court, the burden was upon Smith to sustain his allegations by a preponderance of the evidence. Walker v. Johnson, 312 U.S. 275, 286, 61 S.Ct. 574, 85 L.Ed. 830. This he failed to do. The evidence does not sustain the allegations that the securing and use of his signed statement was a denial of fundamental constitutional rights. There was no all night or prolonged questioning of the prisoner, no use of terror chamber methods to procure a confession. There were no drag net arrests, no threats of mob violence, no before sunrise confession. The practices and methods condemned in the Chambers, Brown, and White cases, supra, are not present in this case. Indeed, the evidence affirmatively shows that the questioning of Smith was without violence, threats, or intimidation; that it was conducted in an orderly manner; and that the signed statement was voluntarily given, and then properly and legally used to corroborate and give weight to the testimony of Carter, the only eye-witness to the actual commission of the crime.

The judgment of the District Court dismissing the writ of habeas corpus was proper. Furthermore, any other judgment would have been wholly unwarranted and unauthorized by the record in this case.

The judgment is affirmed.