## FUSSELL v. THE STATE.

1. It appearing that the defence sought to draw from the fact that the prosecutor had delayed the prosecution for several months an inference unfavorable to him as a witness, there was no error in allowing him to testify that the prosecution had been thus delayed as the result of a consultation between himself and the solicitor-general and another person.

2. There was no error in allowing a witness to testify to a confession which he swears was made by the accused to a third person in the dark, although the witness stated he did not see the accused, but only knew him by his voice. The testimony is admissible, its probative value being a question for the jury.

3. A witness impeached by proof of contradictory statements cannot be sustained by proof of his own declarations, consistent with his evidence at the trial, made at other times and places, whether prior or subsequent to the time of making the contradictory statements imputed to him.

4. Where evidence for the accused tends to impeach more than one of the State's witnesses, the charge of the court on the subject of impeachment should not be restricted to one witness only, but

should be broad enough to embrace all to which the evidence applies.

5. Except as to points herein specifically ruled, there was no error.
October 24, 1893.

Indictment for arson.   Before Judge SWEAT.   Irwin superior court.   April term, 1893.

1. Dan Fussell was convicted of arson, and his motion for a new trial was overruled.   The first special ground of the motion, and the facts concerning the same, are set out in the opinion.

2. Jonas Pearson testified that he heard defendant (who was his cousin) make a statement about this burning to Carrie Chambers; he said he did the work, that he was offered so much but only got three dollars and half a gallon of whisky, that he did the burning of Lewis Mobley's store, and that he was at Pearson's station " on the scout" from that burning.   On cross-examination he testified:   "I passed by Dan [defendant] and Carrie Chambers where they were talking.  .  .  I waited there about a minute.   I don't know how long it had been up to that time since I had seen Dan; it had been four or five years.   I did not speak to him. .  .  .  I never went to shake hands with my cousin Dan.   I did not really know who he was; I only recognized his voice; they were not by the firelight; they were off in the dark.  .  .  ."   Q. "When did you find out that it was Dan Fussell talking that night?"   A. "On Sunday morning about eight o'clock.  .  .  He was talking to Carrie Chambers.  .  .  He and Carrie were standing there talking, and after he left  .  .  Carrie Chambers says, 'Did you know that man?   You ought to know him; that is Dan Fussell.'  She says, 'Didn't you know him last night when you passed him? I says, 'I recognized his voice; I did not know his face; I could not see his face.'"   Defendant moved to exclude from the jury what the witness had testified he heard

defendant say to Carrie Chambers about the burning, upon the ground that the witness derived his knowledge as to the person who made the statement from hearsay evidence, to wit what Carrie Chambers told him the next morning. The motion was overruled.

3. Over objection the court allowed Julia Graham to testify for the State: "I was hallooing and taking on about the burning, and Lewis Mobley said, 'Hush. I know who burnt it. Dan Fussell burnt it.' We were going to the house when Lewis told me that." And Mary Mobley to testify: "On night of burning Lewis Mobley had a conversation with me and my brother George. He told George to go home and put on his clothes and go hunt up Dan Fussell and kill him because he saw him set the house on fire. When we got back to the house George was gone." And Robert Mobley to testify, that next day after the burning Lewis went to his house and told him that Dan Fussell had burnt his house down—burnt his store, that he saw him, that the reason he did not run on to him was because he had a gun, and the man that would do such business as that would kill a man. The objection was, that this was hearsay and illegal testimony. After it had been before the jury for about a day, the court, on excluding similar testimony offered by the State, said: "Gentlemen of the jury, the court instructs you that all such testimony as may have been admitted here before you, offered by the State, showing statements made not at the scene of the burning, and not at the times and places where the defence has introduced proof that he made contradictory statements, the court instructs you that such testimony is ruled out and excluded from your consideration, and you are not authorized to consider it." The motion for new trial assigns error upon the admission of the testimony, and alleges that this instruction to the jury was error, and was not sufficient to dissipate

the effect produced on their minds by the testimony. The court in the final charge gave this further instruction: "In this case, gentlemen of the jury, in reference to this matter of impeachment, the court desires again to call the attention of the jury at this time to the fact that where an effort has been made to impeach a witness by proof of contradictory statements made by him, you are only to consider such testimony as was not ruled out by the court and excluded from your consideration, or such evidence offered by the prosecution to sustain such witnesses as went to show or tended to show that at the scene of the burning at that time and place the witness in fact did not make the conflicting statement disputed by him, and the fact that he made such statement at that time, as were consistent with his testimony before you. But in reference to their showing contradictory statements made by him at any other time and place, that only so far as his testimony shows at those times and places that he had these contradictory statements disputed by him and had made statements then and there consistent with statements made by him on the trial of this case, that only and that far and in that respect are you to consider the testimony which was delivered by the various witnesses upon that subject, and you are not to consider any testimony of any witness showing that at other times and places, other than the scene of burning, and at the times and places as claimed, that other parties were present who testified to contradictory statements made by the witness sought to be impeached; all other times and places to which the testimony has referred has been ruled out, and you will not consider the testimony of any witness that may have testified before you as to these matters." It is alleged that this charge is an improper statement of the rules of law applicable to the subject, and that it is abstruse, recondite, ambiguous and misleading to the jury.

4. Fully set out in the opinion.

5. Error is assigned on the refusal of the court to charge thus: "A witness who is impeached by being shown to have testified knowingly and wilfully false to a material or immaterial fact in the case in which he is sworn, cannot be sustained by proof of general good character." The court charged: "If a witness swears wilfully and knowingly false, even to a collateral fact, his testimony ought to be rejected entirely, unless it be so corroborated by circumstances or other evidence as to be irresistible. But likewise in this connection, the court charges you that if, from the testimony submitted to you, you shall be satisfied that a witness has been shown to have wilfully and knowingly sworn falsely to any material fact in the case, that then, independent of proof of good character and regardless of that, provided you shall be satisfied from the testimony submitted to you that the witness has been shown to have testified falsely, that you would be authorized to disregard the testimony of such witness entirely, and to give it no place in your investigations. Where it is sought, gentlemen of the jury, to impeach a witness and likewise to sustain a witness, it is a matter after all for the jury to determine for themselves as to how far the effort to impeach has been successful, and as to how far· he has been sustained, or as to what weight, if any, they will give to the testimony of such witness in their investigation for the purpose of ascertaining the truth in the case." It is alleged that this charge is more favorable to the State than to defendant, and that it is misleading, ambiguous and erroneous.

E. D. GRAHAM, by brief, for plaintiff in error.

TOM EASON, solicitor-general, by HINES, SHUBRICK & FELDER, *contra.*

BLECKLEY, Chief Justice.

1. The arson for which the accused was indicted was committed by burning the storehouse of Mobley & Mitch-

ell, a copartnership. Lewis Mobley, one of the firm, testified that he saw the accused strike a match and set the house on fire. This occurred in December, and it seems that no steps to prosecute were taken until the following April. The court allowed him to explain the delay, and the explanation given was that he had consulted one T. D. Wilcox and the solicitor-general, and that the delay was the result of this consultation. There was no error in allowing the witness thus to explain the delay. As he professed to have seen the offence committed, it would naturally raise the inquiry why he had not sued out a warrant at once, and caused the guilty person to be arrested. The direction taken by the cross-examination of the witness indicated that the defence sought to draw from the delay an inference unfavorable to the credibility of the witness. The explanation given would tend to rebut or keep down this inference. For that purpose it was legitimate.

2. The witness Jonas Pearson overheard a conversation between the accused and Carrie Chambers, in which the former admitted that he did the burning and was paid for doing it $3.00 and a half-gallon of whisky. The witness recognized the accused by his voice, the conversation being carried on in the dark. The motion to exclude the evidence upon the ground that the witness derived his knowledge as to the person who made the statement from Carrie Chambers, the next morning, was correctly denied, for this motion assumed that the witness, in the course of his cross-examination, receded from his testimony that he recognized the accused by his voice, whereas, as we think, he meant to adhere to that testimony and in no wise qualify it. The jury would know how to estimate the difference between identification made by vision and that made by the sense of hearing together with a previous acquaintance with the voice of the speaker.

3. The code, §3875, declares, " A witness impeached by proof of contradictory statements may be sustained by proof of general good character, the effect of the evidence to be determined by the jury," a previous section, §3871, saying, he may be impeached "by proof of contradictory statements previously made by him as to matters relevant to his testimony and to the case." The witness Lewis Mobley was impeached by proof of contradictory statements, and the court admitted, perhaps for the purpose of sustaining him, evidence of other statements which were consistent with his evidence at the trial. This was error. Before the trial was concluded, the court discovered the error and endeavored to correct it by certain instructions to the jury which are set out in the reporter's statement. We think these instructions were not sufficiently specific. They left the jury to determine what evidence was ruled out or withdrawn; whereas the court should have specified in detail the withdrawn evidence and should have had it eliminated from the brief or notes of the evidence, so that the jury could have made no mistake as to what was left for their consideration. Touching the inadmissibility of the evidence, see *Georgia R. R. & B. Co.* v. *Oaks*, 52 *Ga.* 410, and *McCord* v. *The State*, 83 *Ga.* 531.

4. In charging the jury, the court dealt with the impeachment of witnesses as if there had been evidence tending to impeach one of the State's witnesses only, the language used being this: " Now, in this case, gentlemen of the jury, it is contended by the defence that they have, in the manner pointed out by this law which the court has given you in charge, successfully impeached one of the main witnesses for the prosecution by disproving facts testified to by him, by proof of contradictory statements made by him as to matters relevant to his testimony in this case. You will look to the testimony as to that matter, and determine for yourselves how far

such impeachment has been successful." The recital of facts contained in the motion for a new trial is duly verified by the judge. One of these recitals is, that " Counsel for defendant, in arguing defendant's case before the jury, did not assume the position that one witness only of the State had been impeached by the defence, but insisted, during the argument to the jury, that several of the State's witnesses had been contradicted by the witnesses for the defendant." On looking to the brief of evidence, we find that the jury might have been justified in considering more than one of the State's witnesses as discredited. This being so, the charge on the subject of impeachment should not have been restricted to one only, but should have been broad enough to embrace all to whom the impeaching evidence could have fairly been applied.

5. Except in admitting evidence as to what was said by the witness Lewis Mobley, tending to corroborate what he swore at the trial, and in not afterwards withdrawing it from the jury in such definite terms as to preclude the possibility of mistake concerning it, and except in charging the jury as above set out, in terms too narrow on the subject of impeachment, we discover no error committed by the court; but for these errors there ought to be a new trial.        *Judgment reversed.*