### 2234.   SMITH *v.* THE STATE.

1. A writ of error will not be dismissed, where the judge fails to affix a date to his certificate to the bill of exceptions, unless it affirmatively appears, by proof, that his official signature was made after the time required by law. Civil Code, § 5566. "If the certificate of the presiding judge to the bill of exceptions is not dated, it will be presumed to have been made on the date of the acknowledgment of service by counsel for defendant in error."

2. The fact that an act or statement of the presiding judge may be prejudicial to a defendant about to be placed upon trial for crime is not a legal ground of a motion for continuance.

(a) That the trial judge refused to continue a criminal case, upon a showing that his act or public statement in court in another case might be prejudicial to the defendant in the case in which the continuance was sought, by reason of its effect on the minds of jurors, would not constitute an abuse of the discretion vested in the judge.

(b) The point that a jury has been unduly influenced by the conduct of the presiding judge, to such an extent that any one or more of the panel is disqualified from giving the defendant a fair trial, must be raised by challenge to the polls.

3. A witness whom it is sought to impeach by proof of contradictory statements can not be sustained by proof of his own declaration consistent with evidence at the trial, made at another time and place, whether prior or subsequent to the making of the contradictory statements imputed to him. The testimony of a witness can not be bolstered up by the fact that he has made previous statements conforming to those made upon the stand.

4. While hearsay testimony is generally inadmissible, when information, conversation, or similar evidence is pertinent to explain conduct or ascertain motive, such evidence, so far as these purposes are concerned, changes in character from hearsay to original evidence throwing light on conduct or motive. Where evidence tends to ascribe a particular motive for testimony of a witness, it is competent to disprove the existence of such motive, and hearsay may be admitted for this purpose.

5. As qualified by the notes of the presiding judge, the other assignments of error present no ground for reversal.

Indictment for sale of liquor; from Cobb superior court—Judge Morris. October 6, 1909.

Argued November 30,—Decided December 24, 1909.

*Gober & Griffin,* for plaintiff in error.

*J. P. Brooke, solicitor-general,* contra.

RUSSELL, J. The plaintiff in error excepts to the judgment overruling her motion for new trial, and seeks to set aside a verdict finding her guilty of a violation of the prohibition law.

1. A motion is made to dismiss the writ of error, upon the ground that the certificate of the presiding judge bears no date, and for the further reason that it does not appear that the solicitor-general was served within the time required by law, or whether the bill of exceptions was signed and certified before it was served, there being no date upon said bill of exceptions, as to when the same was certified and signed by the presiding judge. The motion to dismiss the writ of error must be overruled. The certificate of the judge is dated "this, the 16th day of ————, 1909." This is followed by the acknowledgment of service, dated the 16th day of October, 1909, signed by the solicitor-general. Under the rulings in *Porter* v. *Holmes,* 122 *Ga.* 780 (50 S. E. 923), and *McCain* v. *Bonner,* 122 *Ga.* 842 (51 S. E. 36), there is a presumption that the different steps taken in having the certificate signed and service acknowledged were in their proper chronological sequence. Even

if there had not been a ruling upon the subject, it would be plain to us that the bill of exceptions in this case could not be dismissed upon the ground that the certificate signed by the judge was not dated, especially when other parts of the record are considered. In the first place, it is manifest, from what otherwise appears in the record, that the judge really signed the certificate on the 16th day of October, 1909. The word "October" was omitted perhaps through a mere inadvertence of the typewriter who prepared the certificate, and the omission was doubtless not noticed by the judge, because it should have been supplied either as the first word of the last line of the order, or as the last word of the line immediately preceding. But even if the certificate of the judge had not been dated at all, the exact point has been ruled in the cases cited above. In the *Porter* case the certificate to the bill of exceptions was acknowledged by the defendant September 5, 1904, and on that day it was filed in the clerk's office; and the bill of exceptions recited that the judgment overruling the motion for new trial was rendered August 17, 1904. In the present case the bill of exceptions recites that the motion for new trial was overruled on October 6, 1909, and the bill of exceptions was likewise filed after acknowledgment of the service. So that it at least appears from the record that service was acknowledged upon the bill of exceptions, and the bill of exceptions was filed within ten days from the judgment overruling the motion for new trial. This being true, and the judge having signed the certificate, it is to be presumed that each of these steps,—the signing of the certificate, the acknowledgment of service, and the filing of the bill of exceptions,—took place in their natural, chronological order, and, therefore, that the judge certified the bill of exceptions prior to the service and filing. From the dates in the record, the bill of exceptions must have been presented and certified within twenty days. In the *Porter* case the Supreme Court expressly overruled the principle enunciated in the case of *Ware* v. *Trustees,* 65 *Ga.* 296, *Vickers* v. *Sanders,* 106 *Ga.* 266 (32 S. E. 102), and *Cooper* v. *State,* 121 *Ga.* 578 (49 S. E. 707), and properly approved the ruling in *Swatts* v. *Spence,* 68 *Ga.* 496, which was the first decision rendered subsequent to the passage of the act of 1881 (Civil Code, §5566), in which act it was declared, that "No writ of error shall be dismissed in the Supreme Court because the clerk, sheriff, judge, or attorney at law shall have failed to affix

a date to any official signature, unless it is affirmatively made to appear by affidavit or other proof, in the Supreme Court, that such official signature was made after the time required by law." In the *Swatts* case, supra, it was held that if the certificate of the judge is not dated, it will be presumed to have been made on the date of the acknowledgment of service by the defendant in error.

2. The defendant in the court below submitted a written motion for a continuance, and assigns error upon the refusal of the court to grant the motion. The motion as presented was as follows:

"The State *v.* Minnie Smith. Cobb Superior Court. Personally came Minnie Smith before the undersigned attesting officer, who, being duly sworn, on oath says, that she is the defendant in the above named and stated case, and she makes this affidavit to be used on a motion to continue said case. Affiant says that she is not ready for trial at this time, and moves the court to continue the case, either to some time later in the term, when the conditions she complained of do not exist, or until the next term of the court. Affiant says that at the present term of the court the case of the State against Austin Dunn was tried before a jury, and said Dunn was acquitted; that in said case the jury acquitted the defendant on the defendant's statement; that upon the return of the verdict in the court the presiding judge passed an order (a copy of which is hereto attached and marked 'Exhibit A') discharging the jury from further service during said term, on account of the said verdict rendered. Said judge dictated said order to a stenographer in a loud voice and in the presence of the other jurors and a large audience in the court-room. Said Austin Dunn was tried for selling whisky, the same charge with which affiant was charged. There are now twenty-four jurors serving in the court who were supposed to be present in the court-room at the time said order was dictated and made, and heard the same and said jury discharged; that while said judge has drawn twenty-four other jurors now serving, making forty-eight jurors in all in attendance, said episode has become well known and talked about, and affiant honestly believes that there are jurors who would be afraid to believe the statement of the defendant, over the sworn testimony in the case, on account of the discharge of said jury, or at least they have been impressed in that way or in that direction by the discharge of said jury. Affiant will file a plea of not guilty in said case, and expects to rely

upon a statement for a defense, and to make her defense by a state-
ment, and affiant swears that she does not believe that she will
have a fair trial and a fair showing in court where, during the
week, a jury has been discharged upon the facts aforesaid, and as
set out in the order of said judge. Affiant does not make this show-
ing for a continuance for the purpose of delay only, but she makes
it for the purpose of continuing said case, in order that she may
have a fair trial, and before jurors who have not been impressed
with the idea that they do wrong where they believe the defendant's
statement in preference to the sworn testimony in the case. Affiant
further says that after said order was made, she is informed that
it was put on the minutes of the court and has become public, and
she believes has had the tendency and influence herein complained
of. Affiant says that she is entitled to have the original panels
of the jury present as originally drawn and empanelled.

her

Minnie  X  Smith.

mark

"Sworn to and subscribed before me, this September 16th, 1909.
Virgil McCleskey, N. P. Cobb Co., Ga."

The order of the judge was as follows: "The defendant in this
case was put upon trial. Henry Baldwin testified positively that
he purchased whisky from this defendant on different occasions
within two years before the finding of this bill of indictment, in
the county of Cobb. Will Bryant, another witness for the State,
testified that he saw Henry Baldwin buy the whisky on one of the
occasions testified to by Baldwin, and saw him pay the money for
it. Neither one of these witnesses was impeached, and no effort
was made to impeach them. The defendant offered no evidence,
but made a statement in his own defense, in which he denied mak-
ing the sale. An effort is being made on the part of the officers
of this court to break up the sale of whisky in Cobb county, which
seems like has broken out in every corner. It is impossible to get
the best citizens of the county to testify concerning these matters,
for the reason that they do not visit or patronize 'blind tigers.'
If the juries will not act upon positive evidence when it stands un-
impeached, it simply means the licensing of various parties to sell
whisky contrary to law. The jury, in this case, under the above
state of facts, saw proper to return a verdict finding the defendant

not guilty.    This jury is discharged for the ·term.    This, September 14th, 1909.    N. A. Morris, Judge Superior Court, B. R. C."

Even if it were to be conceded that the previous discharge of the jury would have had a prejudicial effect upon the cause of the defendant; for the reason, as contended by counsel for plaintiff in error, that the jury charged with the trial of the cause would be influenced to entirely disregard her statement, still this would not afford a strictly legal ground for continuance.    We might, perhaps, not be prepared to rule that it would be error if a trial judge granted a continuance upon such a ground, or to say that if such circumstances addressed themselves to the discretion of the court a judge would abuse his discretion if he granted a continuance upon such a showing, but we certainly can not hold, as a matter of law, that the refusal of a judge to grant a continuance upon such a showing would be an abuse of his discretion.    The reasons presented in the motion do not come within any of the special grounds specified in the code, nor do we think that they can be technically included in that broad, general discretion with which a judge of the superior court is vested,. in the interest of justice, where the circumstances are extraordinary.    If one jury, by reason of the fact that the views of the judge had become public, would be rendered incapable of giving a defendant a fair trial, why would not any other jury (no special reason to the contrary being shown in this motion) be likewise disqualified when they later became aware of the judge's views, and thus the case be indefinitely postponed?    As said by Judge Lumpkin, in the early case of *Copenhaven* v. *State, 14 Ga. 24*: "Ours is a liberal code upon the subject of continuance in criminal cases;" and we followed this ruling in *Brooks* v. *State, 3 Ga. App. 458 (60 S. E. 211)*.    Especially is very great liberality to be indulged where a continuance or postponement is asked at the term at which the accusation is preferred. As pointed out in the *Brooks* case, supra, sections 961 and 966 of the Penal Code address themselves particularly to that broad discretion which looks primarily to the attainment of justice under the special facts of the particular case,—a discretion unfettered by the exact letter of the law.    But the reasons for the continuance must at last address themselves to the sound legal discretion of the court, and, therefore, must necessarily be such as that the postponement will, by obviating the existing evil or cause of injustice, be of

17

substantial benefit to the defendant. The fact which places the defendant at a disadvantage must certainly not be such an evil as can not be affected by the postponement. The fact that an act or statement of the presiding judge may be prejudicial to a defendant about to be placed upon trial for crime is not a legal ground of a motion for continuance, where it appears that the act or statement would be as likely to affect a juror at a succeeding term of the court as at the term at which his case is called for trial, if at all. As pointed out in *White* v. *State,* 7 *Ga. App.* 20 (65 S. E. 1073), we incline to the view that the point that a jury has been unduly influenced by conduct of the presiding judge, to such an extent that any one or more of the panel are disqualified from giving the defendant a fair trial, must be raised by a challenge to the polls. If the conduct of the judge was such as likely to have influenced a juror unfavorably towards the defendant, this fact would present a good ground for the discharge of the disqualified juror, upon a challenge to the poll. But as stated above, where the act in question would be as likely to have an injurious effect upon all of a certain class of defendants, and such injurious effect would be likely to increase, rather than to diminish, in proportion to the amount of publicity given to the judge's views, it is clear that it could not afford a ground for continuance; because there would be no probability that the defendant would be better prepared for trial at the succeeding term.

3. While the witness A. Love was being examined by the solicitor-general, counsel for the defendant objected to the following question: "I will get you to state if you, when you were asked about this, if you have ever told anything else but what you have told here." The objection offered to the question was as follows: "I object upon the ground that the writing would be the best evidence. You can not put in the sayings of this witness." As appears from the record, this witness had been questioned very fully as to his motive in testifying against this defendant, and, upon cross-examination by the defendant's counsel, had stated that he had first told Mr. Gann, the justice of the peace, about it. Further on, during the cross-examination, he detailed an alleged conversation. This conversation, however, does not refer to any previous statement made by the witness as to whether Minnie Smith sold the whisky. The conversation detailed by the witness was in

reference to what was said before he was induced to make a certain affidavit as to whether the witness was told he. was put in jail for selling whisky; whether he was told it would take a thousand-dollar bond to get him out; and as to whether he was told that if he would make an affidavit against Minnie Smith, the witness would be released from jail without bond. The witness testified, as a substantive·fact, that he told Mr. McKinney how he got the whisky, but he was not asked, so far as the record shows, to state the substance of what he said, or from whom he said at that time he got the whisky, if, indeed, he said to McKinney that he got it from any one. The conversation and the concomitant circumstances which the witness purported to have related were all directed to the point of showing that the real motive of the witness in testifying against Minnie Smith was the desire to effect his own release, and that the witness was perhaps influenced by this motive to testify falsely. The defendant having interrogated the witness as to the conversation in which it was claimed that the witness was unduly and improperly influenced to make an affidavit charging Minnie Smith with the offense of selling whisky, it was proper for the solicitor-general to bring out the whole of the conversation, for the purpose of showing that self-preservation was not the motive which prompted the witness to testify in the case then pending. So far as statements of the witness, said to have been previously made, are concerned, no statement had been made by the witness, up to that time, showing that the witness had stated to any one at any previous time that he had purchased whisky from Minnie Smith at the time and place and under the circumstances detailed by him upon the stand. The very portion of his testimony which related to the vital point on trial before the jury was the statement that he told McKinney and Gann how he got the whisky. The manner in which he got it was not detailed, and no inference could arise, from his answer to that question, as to whether he told the officer he got the whisky from Minnie Smith or from some one else, or as to whether the transaction referred to, if it referred to Minnie Smith, was the same transaction as that being investigated or not.

The court, therefore, properly overruled the objection, and rightly ruled that as to the conversation by which it was sought to show the motive of the witness, the State could prove any portion of such conversation which had been omitted by the defendant. The

court's ruling upon this subject was, "if you go into a part of the conversation, they can put in the balance,—he can put in the balance of the same conversation." To this extent the ruling of the court was correct. At this point, however, the solicitor-general, instead of repeating the former question which should only have elicited anything that the witness might have omitted, under the conditions imposed by the court, shifted his ground and proceeded to ask the witness whether he told the same thing all the time about the main transaction, to wit, the sale of the whisky. The second question left the conversation and other circumstances which had been gone into for the purpose of affecting the credit of the witness and to discredit him by showing that he was testifying falsely on account of inducements improperly offered him, and in order to effect his own release from jail, and sought to have the witness bolster up his testimony and verify it by proof of the fact that he had previously given the same account of his purchase of the whisky in question from the defendant. The latter question, asked by the solicitor-general, was as follows: "In stating the facts of this whisky sale, I will get you to state if you have told it like you told it here, all the time." The objection offered was that the answer would be incompetent, and this objection the court overruled. In this ruling the court erred, according to the rulings of the Supreme Court in *Knight* v. *State*, 114 *Ga.* 48 (39 S. E. 928, 88 Am. St. R. 17), and *Fussell* v. *State*, 93 *Ga.* 450 (21 S. E. 97), and as the State's case entirely depends upon the credibility of this single witness, we think a new trial should have been granted. There was an effort to impeach the witness by proof of contradictory statements at the time the ruling complained of was made; and certainly, therefore, it was incompetent to show by the witness, in corroboration of his testimony in chief, that the witness at another time made the same statement that he had just made to the jury. The effort to discredit the witness, it is true, was by attempting to show that he had been tampered with and unduly influenced; and if the jury had believed this to have been the case, the witness would have been as effectually discredited as if he had been impeached by proof of contradictory statements. But there was also an attempt to impeach the witness by proof of contradictory statements; and in the *Fussell* case it was held that "A witness impeached by proof of contradictory statements can not be sustained

by proof of his own declarations, consistent with evidence at the trial, made at other times and places, whether prior or subsequent to the time of making the contradictory statements imputed to him."

4.   There was no error in permitting the witness Gordon Gann to answer the question as to who furnished him the information that defendant had been sent to Minnie Smith after whisky.   While hearsay testimony is generally inadmissible, nevertheless, when information, conversation, or similar evidence is pertinent to explain conduct or ascertain motive, such evidence, so far as these motives are concerned, changes in character from hearsay to original evidence, throwing light on conduct or motive.   Where evidence tends to ascribe a particular motive for the testimony of a witness, it is competent to disprove the existence of such motive, and hearsay may be admitted for this purpose.

5.   As qualified by the notes of the presiding judge, the other assignments of error present no ground for reversal.   For the reasons stated in the third division of the opinion, a new trial should be had.                                     *Judgment reversed.*

HILL, C. J., dissenting.   I do not think the error of the trial court, as enunciated in the third headnote and third division of the opinion, is of sufficient importance or materiality to require the grant of another trial.   While it is true that a witness can not "bolster up" or strengthen his testimony by testifying that all of his previous and subsequent statements of the transaction about which he is testifying have been consistent with his testimony there given, yet, when he is permitted by the court to so state, I do not think the error is great enough to set aside the verdict based upon the direct and positive testimony of the witness.   It seems to me unreasonable that a jury of ordinarily intelligent men would be so illogical as to give additional weight to the testimony of a witness simply because he testifies that all his other statements in reference to the transaction about which he is testifying have been consistent with his testimony as latterly given.   His claim of consistency would add no probative value to his evidence, and would be wholly immaterial in determining his credibility as a witness.   While the evidence of guilt was weak and in some respects unsatisfactory, yet the jury believed it, and I am unwilling to set aside the verdict because of an error in the admission of testimony which, in my opinion, was inconsequential and immaterial.