## 37863. ODOM v. THE STATE.

HILL, Presiding Justice.

Stanley Aaron Odom appeals from his convictions of the felony murder and armed robbery of Edward Johnson on April 6, 1981. The state presented the following evidence. Brenda Jones testified that she had had intercourse with Ed Johnson, the victim, some seven times prior to April 6, 1981, and each time she charged him $40.00. From her contact with the victim she was aware that he usually had money around the first of the month, so on the morning of April 6, 1981, she called Stanley Odom, the defendant, and suggested that they rob the victim. He agreed and they conceived a plan whereby the defendant would rob the victim by taking his clothes while he was in a hotel room at the New Albany Hotel having intercourse with Brenda Jones.

Using her husband's car, Jones picked up the victim and proceeded to the New Albany Hotel. When they arrived the defendant was standing on the corner. The clerk told Jones that the hotel was full. As she left the hotel she told the defendant of the change in plans, and that she would return to pick him up shortly. She then proceeded to the Page Manor Motel where she obtained a room for herself and the victim. On the pretense of going out for beer, she left, picked up the defendant, and drove back to the motel with him hiding in the car. She then went back in the room (leaving the door unlocked), and she and the victim disrobed and got in bed. A few minutes later the defendant came in and said "Give me your money." The victim said "What's going on," leaped out of bed, and commenced to struggle with the defendant. Jones, who did not see a weapon, grabbed her clothes and left the room. She dressed, got her car, and drove off; when she saw the defendant running across the street she stopped and let him in the car. The defendant was carrying the victim's trousers and jacket. They drove by a cemetery where the defendant threw the victim's clothes in a ditch, following which she took the defendant home. Before he left the car he gave her $80 which she assumed was part of the money he had stolen from the victim. Jones then picked up her husband and they drove back to the Page

Manor Motel. In the meantime the hotel clerk had called the police and they had discovered the victim's body. When Jones drove up, the clerk identified her to the police as the woman who had rented the room. Jones admitted renting the room and was interviewed by the police.[1] The information she gave them led to the retrieval of the victim's clothes.

The clerk at the Page Manor Motel testified that Brenda Jones checked in sometime after 11 a.m. When Jones checked in, the clerk could see an older man in the car. The next time the clerk noticed the couple was when she heard a loud groan, saw the older man's head in the door, and saw a boy pushing the man back into the room. The clerk soon saw the boy leave with the older man's clothing in his arms and then saw Jones leaving the motel in her car. The clerk called her husband and the police. On his way over, her husband, seeing a young man carrying clothes in the street, stopped and asked him what was going on at the motel. The young man dashed into the woods. At the trial the clerk's husband identified the defendant as the young man he had seen, although upon cross examination he acknowledged that he had been unable to identify the defendant in a lineup a couple of days after the event.

The police investigator testified that he arrived at the motel at 12 o'clock and found the victim lying on the floor of the motel room. He identified a number of pictures showing stab wounds in the chest and arm of the victim, referred to by the witness as the deceased.

The state also presented the testimony of an inmate who met the defendant while both were in the Dougherty County jail. He testified that the defendant admitted to him that he planned the robbery with Brenda Jones; hid in her car to get to the motel; went into the room to get the victim's clothes; and, in the struggle that ensued, stabbed the victim several times.

The defendant, who was 18 at the time of trial (May 19, 1981), testified in his own behalf and denied committing the crimes. Relatives (his mother and brother), neighbors and friends (including his fiancee) testified in his behalf. His brother testified that the defendant was on the phone between 11 and 11:30 a.m. on April 6, 1981, and his fiancee testified that she called him about 11:00 a.m. (after she got out of a class at Albany Junior College at 10:50 a.m.) and talked to him until 11:25 a.m. A neighbor testified that the defendant

---

[1] On the basis of her involvement in this incident, Jones was indicted for armed robbery. At the time of trial she had pled not guilty; she testified that no deal had been made promising favorable treatment in exchange for her testimony. The disposition of her case is not apparent from this record.

was at home shortly after 11 a.m.

1. The defendant was convicted of both felony murder (the underlying felony being armed robbery) and armed robbery. He correctly contends that his conviction and sentence for armed robbery must be set aside because the armed robbery is the lesser included felony on which the felony murder rests. *Stanley v. State,* 240 Ga. 341 (1) (241 SE2d 173) (1977), cert. denied, 439 U. S. 882 (1978); *Thomas v. State,* 240 Ga. 393, 404 (242 SE2d 1) (1977), cert. denied, 436 U. S. 914 (1978). The conviction for armed robbery must be set aside.

2. The defendant also contends that the evidence is insufficient to support the verdict. From our review of the evidence, we cannot agree. Brenda Jones' testimony as to the presence of the defendant is corroborated by the clerk's husband and by the inmate. We find that the evidence produced by the state was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of felony murder while in the commission of an armed robbery as charged in count 1 of the indictment. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Having found that the armed robbery conviction must be set aside, we need not consider the sufficiency of the evidence to prove count 2 of the indictment charging the taking of $260.

3. The defendant's final enumeration of error is that the trial court erred in allowing the doctor who performed the autopsy to testify despite the fact that the state had failed to timely comply with Code Ann. § 27-1303 and provide the defendant, upon his written request, with a copy of the autopsy report.[2]

The transcript shows that the morning trial commenced the defendant moved to exclude the testimony of a doctor included on the list of witnesses on the ground that he had not been provided with copies of scientific reports despite a timely written request. The state conceded that the defendant had made a timely written request and that the doctor had prepared an autopsy report which was not given to the defendant due to a mix-up in the district attorney's office. Autopsy reports are expressly included within the purview of the statute. Code Ann. § 27-1303 (c). Following argument by counsel, the trial court ruled that under the statute the report itself was not admissible but that the doctor could testify from his personal knowledge. Arguing that "to allow the doctor to testify would violate

---

[2] Under Code Ann. § 27-1303, timely requested scientific reports in the possession of or available to the district attorney must be provided to the defendant by the district attorney at least 10 days prior to trial.

Georgia Code Annotated § 27-1303 in form and in substance," the defendant objected. In his brief testimony, the doctor stated that the victim sustained five stab wounds (two in his left arm, two in his chest, and one in his abdomen) and that he died as a result of the stab wound in his heart.

Notwithstanding the criticism of exclusionary rules, the General Assembly has deemed it appropriate to provide such sanction for nonproduction of timely requested scientific reports. Code Ann. § 27-1303 (b). The defendant here argues persuasively that to allow the expert to testify as to the result of his or her scientific examination and to exclude only the report itself, defeats the purpose of the legislature. The state argues persuasively that exclusionary rules should be strictly construed and that the legislature provided only for the exclusion of the report, not the testimony of the expert. See *Smith v. State,* 158 Ga. App. 663 (2b) (281 SE2d 631) (1981).[3] We need not resolve this issue in this case.

In his testimony, the police investigator identified five pictures of the victim's body, referred to by the investigator as the deceased. He identified one of the pictures as showing the stab wounds to the deceased's arm, and two others as each showing a stab wound to the deceased's chest. Since this evidence was sufficient to allow the jury to find that the victim died of stab wounds, *McAllister v. State,* 246 Ga. 246 (2) (271 SE2d 159) (1980), the doctor's testimony was merely cumulative. Thus we hold that it was harmless error to admit it in this case.

*Judgment affirmed in part and reversed in part. All the Justices concur.*

DECIDED NOVEMBER 6, 1981.

*Gilberg, Kraselsky & Gray, Loring A. Gray, Jr., Paul D. Creme,* for appellant.

*Hobart Hind, District Attorney, Michael J. Bowers, Attorney General, Mary Beth Westmoreland, Assistant Attorney General,* for appellee.

---

[3] Under somewhat similar circumstances (witness's name not included in the witness list), the trial courts have solved the problem by providing the defense an opportunity to interview the witness, coupled with a recess of the trial to obtain rebuttal evidence. See *Cates v. State,* 245 Ga. 30 (3) (262 SE2d 796) (1980); *Haynes v. States,* 245 Ga. 817, 819-820 (268 SE2d 325) (1980).