## 63241. METTS v. THE STATE.

BIRDSONG, Judge.

Cecil E. Metts was convicted of first degree arson upon an indictment charging that he burned a dwelling house with the intent to defeat the rights of his wife therein without the consent of the insurer of the property. He was sentenced to serve twelve months followed by seven years probation. He appeals the denial of his motion for new trial which was based upon several special grounds. *Held:*

1. The fact that the house was covered by a policy of fire insurance was established by the appellant's own admission that he had such an insurance policy and that he had made a claim under it. There was also ample evidence, though circumstantial in nature, to authorize a finding that the appellant acted with the intention of defeating his wife's right to exclusive use and possession of the house, a right awarded her prior to the fire during the course of a divorce proceeding. The evidence was sufficient to authorize a rational trier of fact to find the appellant guilty of first degree arson beyond reasonable doubt, in violation of either Code Ann. § 26-1401 (a) (3) or Code Ann. § 26-1401 (a) (4). See generally *Crawford v. State,* 245 Ga. 89 (1) (263 SE2d 131); *Baldwin v. State,* 153 Ga. App. 35, 37 (264 SE2d 528).

2. The trial court did not err in allowing the state to question the

appellant and the appellant's wife regarding certain financial transactions which the appellant had made immediately prior to the initiation of the divorce proceedings and prior to the burning of the house. The evidence was relevant in that it tended to establish a desire on the appellant's part to keep as many assets as possible out of his wife's hands, a desire which his daughter testified he had admitted to harboring. " 'Where knowledge, motive, intent, good or bad faith, and other matters dependent upon a person's state of mind are involved as a material element in a particular criminal offense for which the defendant is on trial, and the defendant has engaged in a course of conduct at or about the same time the act in question was committed, and these transactions are such as to illustrate the state of the defendant's mind on the subject involved, proof of them may be received.' *Curtis v. State,* 102 Ga. App. 790, 795 (118 SE2d 264)." *Bunge v. State,* 149 Ga. App. 712, 716 (256 SE2d 23). A mere conjecture that the facts brought out by this line of questioning may have prejudiced less wealthy jurors against the appellant by portraying him as a man of considerable wealth does not outweigh the clear relevance of the testimony.

3. The trial court did not err in allowing a witness for the state to explain on redirect examination certain seemingly untrue responses elicited from him during cross-examination concerning what he had previously told law enforcement authorities. This witness was a neighbor who had arrived on the scene soon after the fire broke out and had encountered the appellant on the premises. He testified that he asked the appellant what had happened and the appellant responded that something had exploded after he plugged in a coffee pot. Although the witness further testified that he had given a written statement containing this information to the police later that same day, the trial court disclosed to the jury after examining the statement that it in fact contained no mention of the coffee pot incident. The state subsequently was allowed on redirect examination to establish that although the witness had failed to provide the information to police, he had included it in a statement given to an arson investigator from the fire department the same day. This clarification properly was allowed under the rule that a witness may be examined on redirect regarding apparent inconsistencies brought out on cross-examination and may be allowed to explain or reconcile these inconsistencies. See *Bivins v. State,* 200 Ga. 729 (8) (38 SE2d 273); *Wynes v. State,* 182 Ga. 434 (3) (185 SE 711); *Walton v. State,* 65 Ga. App. 124 (15 SE2d 455).

4. The trial court erred, however, in further allowing the witness to testify on redirect that he had previously informed the state's attorney of his failure to relate the coffee pot incident to the police.

Although a witness' prior inconsistent statements may be used to impeach his testimony at trial, his prior consistent statements may not, with some exceptions not applicable here, be used to bolster his testimony, even in an attempt to rehabilitate the witness following cross-examination. See *Smith v. State,* 7 Ga. App. 252 (3) (66 SE 556); *Popham v. State,* 138 Ga. App. 876 (1) (227 SE2d 825). But see *Tucker v. State,* 244 Ga. 721, 727 (261 SE2d 635); *Mullins v. State,* 147 Ga. App. 337 (7) (248 SE2d 706). In the event of a new trial, we assume this evidence will not be proffered in this erroneous manner.

5. The trial court also erred in allowing the state to present testimony concerning the results of a scientific test conducted by a private firm showing the presence of a volatile accelerant in carpet samples taken from the house subsequent to the fire, inasmuch as the state failed to comply with the defendant's written request pursuant to Code Ann. § 27-1303 for copies of scientific reports in its possession. See *Tanner v. State,* 160 Ga. App. 266 (287 SE2d 268).

The state sought to avoid the use of the documentary recording of test results by a private firm retained by an insurance company by calling instead the actual experts who performed the tests and thereafter contending that the defense was not entitled to the documentation of the test results because the state did not use them. Should this court adopt and thus approve such a procedure, we would consent to an evidentiary technique which gives the appearance of a sham and approximates a direct circumvention of the provisions of Code Ann. § 27-1303. In this case, the state's experts had arrived at results which were inconclusive at best. The defense was aware of the weakness of those written reports. Because of the actions of the state, the defense was hobbled in its efforts to defend against the testimony of the experts and to prepare to the fullest an effective cross-examination.

The language utilized by Judge Stolz in his dissent in *Seaney & Co. v. Katz,* 132 Ga. App. 456 (208 SE2d 333) at p. 458 is apropos considering the tactics of the state for those tactics have: ". . . made the statute 'a toothless tiger,' 'a fish that cannot swim,' indeed, a law that it is not necessary to enforce." The statute makes it mandatory (using the word "shall") for the defendant to be given a complete copy of any written report in the possession of the prosecution which the state uses and provides that failure to furnish the report results in the report being excluded from the prosecution's case.

In this case, harm resulted when the state failed to abide by the discovery statute and the test results thereafter were used against the defendant. To conclude otherwise is to speculate what effect these scientific opinions had upon the jury. This jury was aware that some witnesses had testified they saw and smelled things that caused

them to believe a volatile accelerant may have been used. Whatever doubt may be generated by a defendant is irrevocably lost when experts testify there is scientific proof of what theretofore had only been surmised based upon circumstances. In this case, when one adds to the impact of the state's use of the oral evidence, the admitted reason for the failure of the state to furnish the test results to the defense as required by Code Ann. § 27-1303, we find in actual fact the fulfillment of the prediction of this court in *Tanner v. State,* supra, p. 268, where we said: "To allow such a result would render unenforceable a criminal defendant's statutory right to pretrial discovery of certain documents the state intended to use against him at trial, for the state might simply refuse to comply with a defendant's demand for a copy of such documents and rely upon the person who took the in-custody statement or made the scientific report to offer testimony at trial which would place the substance of the 'undiscovered' documents into evidence or, as here, use the documents to refresh his memory and then offer testimony as to their substance." We conclude this error was harmful and requires a new trial.

6. The trial court did not abuse its discretion in allowing the state to seek from the appellant on cross-examination the probability or improbability of whether certain discrepancies between his testimony and the testimony of other witnesses who had previously testified could be resolved.

7. Finally we reject the appellant's contention that the trial court erred in asking a question of the appellant's daughter which intimated an opinion as to his guilt, as no objection, motion for mistrial, or request for curative instructions was made in response to the question. See *State v. Griffin,* 240 Ga. 470 (241 SE2d 230).

*Judgment reversed. Quillian, C. J., McMurray, P. J., and Shulman, P. J., Carley and Pope, JJ., concur. Deen, P. J., Banke and Sognier, JJ., dissent.*

DECIDED MAY 12, 1982 —
REHEARING DENIED JUNE 21, 1982 — ▮▮▮▮▮▮▮▮

*Gerald S. Mullis,* for appellant.
*Willis B. Sparks III, District Attorney, Thomas J. Matthews, Graham A. Thorpe, Assistant District Attorneys,* for appellee.

BANKE, Judge, dissenting.
While I wholeheartedly agree with the majority's conclusion in Division 5 that the court erred in allowing the state to prove the results of the private scientific tests, I cannot agree that the error was harmful.

The incendiary origin of the fire was not disputed by the appellant and was proved beyond the shadow of a doubt. No fewer than seven witnesses testified that they smelled the odor of paint thinner in the house after the fire, and four witnesses with experience in fire investigation testified that there were "pour trails" or "vapor trails" on the floors and carpets, evidencing the use of a volatile accelerant. A 5-gallon pail with a spout cut into it was found just outside the house after the fire. It contained a small amount of liquid which was described as smelling like paint thinner. An expert in arson investigations testified that the fire had burned horizontally through the house, rather than in the "V"-shaped pattern characteristic of a fire which spreads from a single point. He further stated that the furnace, water heater, wiring, and electrical appliances, which he described as the most common ignition sources for accidental fires, had been ruled out as the source of the fire.

The private tests at issue provided additional evidence that a volatile accelerant had been used to start the fire, but in the face of the other evidence, how could a rational juror have concluded otherwise? Indeed, the appellant conceded under cross-examination that he himself believed someone had burned the house. In *Odom v. State,* 248 Ga. 434 (3) (283 SE2d 885) (1981), the Supreme Court recently held that a trial court's alleged error in admitting an autopsy report which the state had not made available to the defense in compliance with Code Ann. § 27-1303 was harmless in the context of circumstantial evidence tending to show the same cause of death. See also *Blackmon v. State,* 158 Ga. App. 665, 667 (281 SE2d 634) (1981). I do not believe that the admission of the scientific tests at issue here can be characterized as harmful error in the face of this Supreme Court ruling.

The real issue before the jury in this case was not whether the fire was of incendiary origin but whether the appellant was the one who set it. The evidence of guilt in this regard was also overwhelming. The appellant was at the scene when the fire started, at which time, according to his neighbor, he explained that there had been an explosion when he tried to plug in a coffee pot. This explanation conflicted with the testimony of investigators, who stated they found no coffee pot in the house and that the fire was not electrical in origin. The appellant left the scene as the fire engines were approaching and then left town without talking to his wife or to the fire officials. His regular business was selling finishing materials such as varnishes, lacquers and thinners, and he had several 5-gallon containers of thinner stored in a work shed behind the house. Finally, there was evidence that he was in the midst of bitter divorce proceedings and that he had expressed a strong desire to keep his wife from getting his

house.

In the context of all the evidence presented during the course of this 4-day trial, it is certainly "highly probable" that the testimony concerning the results of the private scientific test did not contribute to the verdict. I believe that it is also "highly probable" that the verdict was unaffected by the court's error in allowing the witness referred to in Divisions 3 and 4 to bolster his testimony by reference to prior consistent statements. For these reasons, I respectfully dissent to the reversal of the appellant's conviction. See generally *Johnson v. State,* 238 Ga. 59 (230 SE2d 869) (1976).

I am authorized to state that Presiding Judge Deen and Judge Sognier join in this dissent.