## 72504. WHITE v. THE STATE.
### (351 SE2d 536)

BEASLEY, Judge.

In a bench trial, appellant was convicted of driving a moving vehicle while his blood contained more than .12 percent by weight of alcohol. OCGA § 40-6-391 (a) (4). On appeal he sets forth two related points: neither his intoximeter test results nor the testimony of the intoximeter operator should have been admitted into evidence, because the state failed to furnish appellant with a copy of the blood alcohol test results despite appellant's timely written request pursuant to OCGA § 17-7-211.

It was not until the state called as a witness the intoximeter operator that appellant realized that the test result he had received from the state was not the one related to the charge he was then facing. The state maintained it had sent appellant a copy of the proper test result pursuant to appellant's request, but the trial court acknowledged that appellant had not been provided a copy of the test. The trial court, however, did not view the state's oversight as a bar to the admission into evidence of the proper test result and the intoximeter operator's testimony. Instead, it afforded appellant's counsel an opportunity to interview the intoximeter operator/witness prior to his appearance as a witness.

"[OCGA § 17-7-211] allows, for the first time, the pre-trial discovery in criminal cases of scientific reports, whether *inculpatory* or *exculpatory*, which the state intends to use in prosecution of the case-in-chief or in rebuttal." *State v. Meminger*, 249 Ga. 561, 562 (1) (292 SE2d 681) (1982). "The defendant is entitled to have the document at least ten days prior to trial. If ten days are not available, the defendant is entitled to the document within a reasonable time and may be entitled to a continuance or recess as the trial judge shall determine. Only where the prosecuting attorney fails altogether to furnish the document does the exclusionary rule apply." *Law v. State*, 251 Ga. 525, 528 (307 SE2d 904) (1983).

Here it appears the court found that, although the state had sent a copy of test results and other documents requested by defendant's counsel to him, two copies of a test from an April 26 arrest were sent and a copy of the test from the March 16 arrest was not sent. Defendant was on trial in *this* case on the March 16 incident, not on the April 26 incident. There was no finding, and no evidence, that the mistake was other than inadvertent.

Defendant's counsel did not notice in advance of trial that the

test report was for a day other than the day in question, and that the operator and arresting officer listed were different from the ones reported on his traffic citation as having arrested him and administered the test. He obviously did not rely on the wrong report in preparing his defense, else he would have noticed these clearly appearing discrepancies. He admitted that at least one of the copies was "perfectly legible, you can read it"; after receipt of the documents from the state, he never complained of illegibility or of their being documents other than the ones sought.

The purpose of requiring the state to furnish to defendant the scientific evidence in advance of trial is "in order to prepare." *Law v. State*, supra at 527. Here it is apparent that provision of the wrong report had no effect on defendant's trial preparation. He did not interview the wrong operator or prepare to challenge the operation of the wrong intoximeter. Nor did he articulate that he had prepared to defend against a .21 reading rather than against a .18 reading, or that it would make a difference in his defense. The result of the March 16 test for the offense on trial was .18; the result of the April 25 test, of which defendant was provided advance copy, was .21.

The court offered to allow defendant to interview the witness who administered the test on trial and the defendant did so, stating that it would take only a few minutes and indicating after the interview that the time was sufficient for him and there would be no matter of surprise at trial.

With these facts in mind, we conclude that the court did not err in refusing to apply the sanction of exclusion. The state of affairs differ materially in *Taylor v. State*, 172 Ga. App. 408, 411 (3) (323 SE2d 212) (1984), and *Tanner v. State*, 160 Ga. App. 266 (287 SE2d 268) (1981). The severe response of exclusion altogether was called for in those cases because the state did not furnish anything. As said in *Law*, supra at 528, "The only circumstance making the exclusionary rule applicable is the failure of the prosecuting attorney to afford discovery at all . . . Only if no copy at all had been furnished by the district attorney would the exclusionary rule have applied." It was repeated in *Taylor*, supra at 410: "The only circumstance making the exclusionary rule applicable is the failure of the prosecuting attorney to afford discovery at all. OCGA § 17-7-211 (c)."

Where a scientific report is furnished on demand and timely, albeit the wrong report, and there is no evidence whatsoever that the error was other than an innocent mistake, and no harm results to defendant, the rule of exclusion should not automatically apply. The circumstances surrounding the provision of discovery, on the one hand, and the harm to defendant arising from the deficient provision, on the other hand, should be weighed by the trial judge in assessing whether the sanction of exclusion should be imposed. The trial court

would of course be bound to apply the appellate interpretations which govern.

Even if error had been demonstrated, where no harm is claimed, and none appears, the judgment is not reversible. *Green v. State*, 177 Ga. App. 179, 180 (1) (338 SE2d 761) (1985).

*Judgment affirmed. Banke, C. J., Deen, P. J., McMurray, P. J., Birdsong, P. J., Carley, Sognier, and Pope, JJ., concur. Benham, J., dissents.*

BENHAM, Judge, dissenting.

Under the majority holding, where a proper and timely motion is made under OCGA § 17-7-211 for the discovery of scientific reports, and the State responds by sending the defendant a scientific report pertinent to an entirely different case, it is now permissible to use at trial the scientific report pertinent to the case in which the discovery request was made, even though it was not given to the defendant, so long as the failure to make the report available to the defendant was "inadvertent" or "an innocent mistake" and no harm resulted to the defendant.

The majority condones the trial court's admission of the scientific report and the intoximeter operator's testimony in the case at bar on several grounds: (1) the sanction of exclusion is required only when no copy is furnished the defendant; (2) there is no evidence that the failure to provide appellant with a copy of the report was anything other than "innocent mistake"; and (3) no harm resulted to appellant. Inasmuch as I find myself at odds with the majority at each of the three junctures mentioned above, I must dissent.

It is true that "[o]nly where the prosecuting attorney fails altogether to furnish the document does the exclusionary rule apply." *Law v. State*, 251 Ga. 525, 528 (307 SE2d 904) (1983). However, a mid-trial, five-minute review of a report concerning a polygraph examination of a defendant has been labelled by this court as "[constituting] an unreasonable time and is tantamount to failing altogether to furnish a report." *Taylor v. State*, 172 Ga. App. 408, 410 (323 SE2d 212) (1984). Similarly, the opportunity presented to appellant in the case at bar, to interview the intoximeter operator in mid-trial prior to his appearance as a witness, is tantamount to failing altogether to furnish a report.

The majority states that "the severe response of exclusion altogether was called for [in *Taylor*] because the State did not furnish anything." However, Mr. Taylor and appellant were placed in similar situations: neither received the scientific report subsequently used against him until the evidence was introduced at trial. If Mr. Taylor can be said to have not received anything, then appellant, likewise, received nothing and should be afforded the statutory sanction, exclu-

sion.

The majority apparently distinguishes *Taylor* from the case at bar on the ground that appellant received something, albeit a scientific report other than the one used against him at trial. To hold that the State has complied with OCGA § 17-7-211 when it has furnished a defendant a scientific report pertinent to a case other than the one in which he is standing trial is to emasculate the statute and to open the door to potential abuse by the State. The statute can only be read as requiring the exclusion of any unproduced scientific report requested by the defendant, and it can only be assumed a defendant will seek only a report pertinent to his case. In no way can the statute be read as equating with statutory compliance the State's act of furnishing *any* scientific report without regard for the case in which such a report will be used.

Having stated that appellant was furnished a scientific report, the majority then takes the seemingly opposite view that the failure to provide appellant with a copy of the report was anything other than an inadvertent or innocent error. OCGA § 17-7-211 (b) states that "the defendant shall be entitled to have a complete copy of any written scientific reports in the possession of the prosecution which will be introduced in whole or in part against the defendant by the prosecution . . . (c) Failure by the prosecution to furnish the defendant with a copy of any written scientific report, when a proper and timely written demand has been made by the defendant, shall result in such report being excluded and suppressed from evidence in the prosecution's case-in-chief or in rebuttal."

"The statute makes it mandatory (using the word 'shall') for the defendant to be given a complete copy of any written report in the possession of the prosecution which the State uses and provides that failure to furnish the report results in the report being excluded from the prosecution's case." *Metts v. State*, 162 Ga. App. 641 (5) (291 SE2d 405) (1982). "This statute speaks in mandatory terms . . ." *Luck v. State*, 163 Ga. App. 657 (2) (295 SE2d 584) (1982). The statute contains no "inadvertent" or "innocent error" exception to its mandatory language, and the judicial branch has not, until today, constructed such an exception. In light of the statute's wording, I cannot condone such a judicial interpretation of the statute.

The majority also concludes that appellant suffered no harm from the admission of the scientific report for which he had asked but was not given. I must point out that appellant was found guilty of driving a moving vehicle while there was .12% or more by weight of alcohol in his blood. OCGA § 40-6-391 (a) (4). In order for a defendant to be convicted of this offense, "[t]he State must show, and the factfinder must find, that the defendant had at least a .12% blood-alcohol count while he was driving." *Lester v. State*, 253 Ga. 235, 237

(320 SE2d 142) (1984). Such a showing can only be made by having admitted into evidence the result of the defendant's intoximeter or breathalyzer test, the very scientific report at issue here. Without that evidence, appellant's conviction cannot stand, for it matters not how impaired his driving ability was when the charge against him is a violation of OCGA § 40-6-391 (a) (4). Thus, without the admission of the scientific report into evidence, there would not have been, from a legal standpoint, sufficient evidence to support appellant's conviction. From the factual standpoint, "harm resulted when the State failed to abide by the discovery statute and the test results thereafter were used against the defendant. To conclude otherwise is to speculate what effect these scientific opinions had upon the [factfinder]." *Metts v. State*, supra at Division 5. "[R]etreat to a position of 'harmless error' . . . would allow the State to skimp to a skeleton on the divulgence mandated by the legislature, deprive the defendant of information he is entitled to, and secure a conviction with the added evidence as insurance to persuade, however immeasurably, the factfinder. Such would render the requirement empty and meaningless in at least some cases, and we would have to divine in which cases it made a difference for the [factfinder]." *Dickey v. State*, 179 Ga. App. 383, 386 (346 SE2d 864) (1986) (Judge Beasley dissent).

I respectfully dissent from the majority's affirmance of the trial court's admission of the scientific report and the intoximeter operator's testimony, and the rationale employed to reach that affirmance.

DECIDED DECEMBER 5, 1986.

*William E. Frey*, for appellant.
*John C. Carbo III, Solicitor*, for appellee.